[Cite as *State v. Hampton*, 2021-Ohio-1834.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**DARKE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 2020-CA-5 |
| | : | |
| v. | : | Trial Court Case No. 2020-CR-64 |
| | : | |
| STACY W. HAMPTON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of May, 2021.

. . . . . . . . . . .

DEBORAH QUIGLEY, Atty. Reg. No. 0055455, Assistant Prosecuting Attorney, Darke County Prosecutor's Office, 504 South Broadway Street, Greenville, Ohio 45331
    Attorney for Plaintiff-Appellant

DAVID ROHRER, Atty. Reg. No. 0042428, 537 South Broadway, Suite 204, Greenville, Ohio 45331
    Attorney for Defendant-Appellee

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Plaintiff-appellant, the State of Ohio, appeals from the trial court's final order of October 29, 2020, in which the court sustained a motion to suppress filed by Defendant-appellee, Stacy W. Hampton. Raising one assignment of error, the State argues that the trial court erred by ordering the suppression of evidence obtained by police officers during a traffic stop because the officers took Hampton into custody and interrogated him without delivering a *Miranda* warning. We hold that the trial court erred by finding that the officers subjected Hampton to a custodial interrogation, and therefore, the court's order is reversed.

## I. Facts and Procedural History

{¶ 2} At 1:11 a.m. on May 8, 2020, Officers Monnin and Jones of the Greenville Police Department stopped Hampton in his vehicle on East Main Street in Greenville, after they observed Hampton driving the vehicle in excess of the posted speed limit. The officers requested a K-9 unit when they initiated the stop.

{¶ 3} Officer Monnin approached, verified Hampton's identity and asked Hampton whether he had anything illegal in his vehicle. Hampton answered that he did not know and asked whether Officer Monnin planned to conduct a search. Officer Monnin rejoined that Hampton should have been aware of the contents of his own vehicle, prompting Hampton to deny that the vehicle contained anything illegal. By Officer Monnin's account, Hampton "was stumbling over his words, [appearing to be] very nervous," and "[h]is hands were shaking," which led the officer to ask Hampton to step out of his vehicle and stand on the adjacent sidewalk. Transcript of Suppression Hearing 13:15-13:22, Oct. 15, 2020. At that point, Officer Monnin returned to his vehicle to prepare a traffic citation, while Officer Jones stood on the sidewalk with Hampton. The officers did not

place Hampton in handcuffs or otherwise restrain him, and although they did not conduct a pat-down search, they did relieve him of a knife that was visibly protruding from a pants pocket.

{¶ 4} Officer Monnin began writing the traffic citation at approximately 1:15 a.m. At 1:22 a.m., a dispatcher informed Officer Monnin that the K-9 unit was still several minutes from the scene. The K-9 unit arrived approximately five minutes later, as Officer Monnin was completing the traffic citation.

{¶ 5} Officer Monnin then approached Hampton and asked him again, twice, whether he had anything illegal in his vehicle. Hampton admitted that he did have "all kinds" of illegal items in the vehicle, including illicit methamphetamines. At approximately 1:28 a.m., the officers placed Hampton in handcuffs and delivered a *Miranda* warning. In light of Hampton's admission, the officers did not have the K-9 unit perform a free air sniff-search. The officers, instead, searched Hampton's vehicle themselves, discovering quantities of marijuana and methamphetamines, as well as various drug paraphernalia.

{¶ 6} Hampton was indicted on May 14, 2020, for one count of aggravated possession of drugs in violation of R.C. 2925.11(A). On September 23, 2020, Hampton moved to suppress the evidence obtained during the traffic stop, and the trial court sustained the motion in its decision of October 29, 2020. The State timely filed a notice of appeal on November 2, 2020.

## II. Analysis

{¶ 7} For its assignment of error, the State contends that:

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT

FOUND THAT AN OFFICER REQUESTING A LAWFULLY STOPPED DRIVER TO STEP OUT OF THEIR [sic] VEHICLE DURING THE COURSE OF A ROUTINE TRAFFIC STOP PLACES THE DRIVER "IN CUSTODY" AND THEREBY REQUIRING [sic] THE DRIVER BE ADVISED OF HIS CONSTITUTIONAL RIGHTS PURSUANT TO *MIRANDA V. ARIZONA*.

{¶ 8} According to the State, the trial court mischaracterized Officer Monnin and Jones's permissible exercise of discretion as a display of authority equivalent to taking Hampton into custody. The State maintains that the officers did not take Hampton into custody merely by ordering him to exit his vehicle or by relieving him of a weapon he carried visibly on his person, and because Hampton was not in custody at the time he made certain incriminating statements, the State argues that the trial court erred by ordering the suppression of the statements in reliance on *Miranda*.

{¶ 9} The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 8, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *see also State v. Taylor*, 138 Ohio App.3d 139, 145, 740 N.E.2d 704 (2d Dist.2000) (noting "the Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article 1" of the Ohio Constitution "protect the same interests in a consistent manner"). Warrantless searches and seizures violate this prohibition unless conducted pursuant to one of the "few specifically established and well-delineated exceptions." (Citations omitted.) *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One of these exceptions "is commonly known as an investigative or *Terry* stop," which includes the temporary detention of motorists for the enforcement of traffic laws. *State v. Dorsey,* 10th Dist. Franklin No. 04AP-737, 2005-

Ohio-2334, ¶ 17, citing *Terry*.

{¶ 10} Though not necessarily requiring a warrant, the temporary "detention of [persons] during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning" of the Fourth Amendment. (Citations omitted.) *Whren v. United States*, 517 U.S. 806, 809-810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). An "automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.* at 810. Generally, a police officer's decision to stop an automobile will comport with this requirement if the officer has a "reasonable suspicion" of criminal activity. *United States v. Lopez-Soto*, 205 F.3d 1101, 1104-1105 (9th Cir.2000); *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23.

{¶ 11} Interactions among police officers and citizens take one of three forms: consensual encounters, investigatory detentions, and arrests. *See, e.g.*, *State v. Millerton*, 2015-Ohio-34, 26 N.E.3d 317, ¶ 20 (2d Dist.). An "encounter between a police officer and a member of the public is consensual if a reasonable person would feel free to disregard the officer's questions or [to] terminate the encounter and go about his * * * business." *City of Columbus v. Beasley*, 2019-Ohio-719, 132 N.E.3d 1201, ¶ 41 (10th Dist.), citing *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *see also State v. Weisgarber*, 2017-Ohio-8764, 88 N.E.3d 1037, ¶ 16 (2d Dist.) (stating that a consensual encounter "occur[s] when [a] police [officer] merely approach[es] a person in a public place and engage[s] the person in conversation, [with] the person remain[ing] free * * * to [refuse to] answer and * * * walk away"). By contrast, a person is "subject to an investigatory detention when, in view of all the [attendant]

circumstances * * *, a reasonable person" would believe "that he [is] not free to leave or is [otherwise] compelled to respond to questions." *State v. Lewis*, 2d Dist. Montgomery No. 22726, 2009-Ohio-158, ¶ 22, citing *U.S. v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

{¶ 12} A *Miranda* warning is "intended to protect a suspect from the coercive pressure [associated with] a custodial interrogation." *City of Cleveland v. Oles*, 151 Ohio St.3d 1, 2017-Ohio-5834, 92 N.E.3d 810, ¶ 9, citing *Miranda v. Arizona*, 384 U.S. 436, 444 and 469, 86 S.Ct. 1602, 15 L.Ed.2d 694 (1966); *Lewis* at ¶ 22. If a "suspect [answers questions] while in custody without first [being] informed of his * * * *Miranda* rights, [then] the [answers] may not be admitted at trial as evidence of [his] guilt." *Oles* at ¶ 9, citing *Miranda* at 479.

{¶ 13} Here, the trial court held that Hampton "was in detention and [was] not free to leave" once Officer Monnin directed him "to leave his vehicle and stand on the sidewalk." Decision and Entry on Defendant's Motion to Suppress 6, Oct. 29, 2020 [*hereinafter* Decision]. The court reasoned that Officer Monnin had asserted his authority over Hampton, thereby taking Hampton into custody, because Hampton "was continually under the supervision of Officer Jones" while he stood on the sidewalk, and because the officers had removed Hampton's knife from his person when he exited his vehicle. *Id.* Additionally, the court noted that "directing a driver to exit his car is not customary or generally necessary for a minor traffic violation." *Id.*

{¶ 14} Regardless of whether Officer Monnin customarily asked motorists to exit their vehicles during traffic stops, a police officer may require a motorist to exit a vehicle during a traffic stop without implicating the Fourth Amendment, and although a traffic stop

"significantly curtails the 'freedom of action' of the driver," the driver is "not 'in custody' for the purposes of *Miranda*" solely as a result of being stopped. *Berkemer v. McCarty*, 468 U.S. 420, 436 and 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Once " 'a motor vehicle has been lawfully detained for a traffic violation,' " police officers " 'may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable seizures.' " *Maryland v. Wilson*, 519 U.S. 408, 412, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), fn.6; *see also State v. Chase*, 2d Dist. Montgomery No. 25322, 2013-Ohio-2346, ¶ 33.

{¶ 15} Furthermore, despite the fact that Hampton "was continually under the supervision of Officer Jones" while he stood on the sidewalk, Officer Jones's supervision did not restrict Hampton's "freedom of action" any more than the traffic stop itself or Officer Monnin's order that he exit his vehicle. Not only would "few motorists * * * feel free either to disobey * * * directive[s] to pull over [their vehicles] or to leave [afterward] without being told [that] they might do so," in "most [s]tates, it is [actually] a crime either to ignore a policeman's signal to stop [or] to drive away without permission." *Berkemer* at 436, citing R.C. 4511.02.[1] The "supervision" to which the trial court referred is thus inherent in any traffic stop, meaning that Hampton was not taken into custody by virtue of being supervised any more than he would have been taken into custody had he been allowed stand on the sidewalk unsupervised; we note, too, that although Hampton was being supervised, the officers did not place him in handcuffs or otherwise restrain him.

---

[1] R.C. 4511.02 has since been amended and renumbered as R.C. 2921.331. Under R.C. 2921.331(A), "[n]o person shall fail to comply with any lawful order or direction of any police officer invested with authority to direct, control, or regulate traffic.

{¶ 16} The officers' removal of Hampton's knife likewise did not constitute an assertion of authority such that Hampton was effectively taken into custody. As part of a traffic stop, a police officer "may conduct a limited protective [pat-down] search [of a motorist's person] for concealed weapons if the officer reasonably believes that the [motorist] may be armed or [otherwise pose] a danger to the officer or to others." *State v. Broaddus*, 2d Dist. Montgomery No. 23525, 2010-Ohio-490, ¶ 20. The top of Hampton's knife protruded visibly from a shallow pants pocket, and the officers merely removed the knife without conducting a pat-down search.

{¶ 17} In addition, Officer Monnin did not truly interrogate Hampton between the time that Hampton exited his vehicle and the time that the K-9 unit responded to the scene. As the trial court observed, the questions that Officer Monnin asked during this interval related to Hampton's "ownership of the vehicle, [Hampton's] driving behavior[,] and the weather." These questions were, contrary to the trial court's characterization, at least tangentially relevant to the traffic citation that Officer Monnin was preparing, yet irrespective of relevance, the questions were not " 'reasonably likely to elicit an incriminating response' " from Hampton. *State v. Strozier*, 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304, ¶ 19 (2d Dist.), quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). For all of the foregoing reasons, the State's assignment of error is sustained.

### III. Conclusion

{¶ 18} We hold that Hampton was not subjected to a custodial interrogation during the traffic stop on May 8, 2020. The trial court's final order of October 29, 2020, is therefore reversed, and the case is remanded to the trial court for further proceedings

consistent with this opinion.

. . . . . . . . . . . . .

HALL, J. and EPLEY, J., concur.

Copies sent to:

Deborah Quigley
David Rohrer
Hon. Jonathan P. Hein