**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cleveland v. Oles,* **Slip Opinion No. 2017-Ohio-5834.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-5834

THE CITY OF CLEVELAND, APPELLANT, *v.* OLES, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cleveland v. Oles,* **Slip Opinion No. 2017-Ohio-5834.]**

*Constitutional law—Fifth Amendment to United States Constitution—Article I, Section 10 of Ohio Constitution—Placement of a suspect in front seat of a police vehicle during a traffic stop does not alone determine whether suspect has been subjected to custodial interrogation such that* Miranda *warnings were required—Relevant inquiry is whether, under totality of circumstances, a reasonable person in suspect's position would have understood himself to be in custody—Appellee was not subjected to custodial interrogation because intrusion by trooper was minimal, questioning and detention were brief, and interaction was nonthreatening and nonintimidating—Judgment affirming suppression of appellee's statements reversed and cause remanded.*

(Nos. 2016-0172 and 2016-0282—Submitted March 1, 2017—Decided July 19, 2017.)

APPEAL from and CERTIFIED by the Court of Appeals for Cuyahoga County, No. 102835, 2016-Ohio-23.

**O'CONNOR, C.J.**

{¶ 1} In this consolidated appeal, we address whether the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution require a law-enforcement officer to provide *Miranda* warnings to a suspect who is placed in the front seat of a police vehicle for questioning during a traffic stop. We hold that the placement of a suspect in the front seat of a police vehicle during a traffic stop is not alone determinative of whether the suspect has been subjected to a custodial interrogation. The relevant inquiry is whether, under the totality of the circumstances, a reasonable person in the suspect's position would have understood himself or herself to be in custody. Accordingly, we answer the certified-conflict question in the negative. We also reverse the judgment of the Eighth District Court of Appeals because the circumstances here do not indicate that appellee, Benjamin S. Oles, was subjected to a custodial interrogation.

**RELEVANT BACKGROUND**

{¶ 2} On the night of September 19, 2014, an Ohio State Highway Patrol trooper was monitoring traffic on Interstate 90 in Cleveland with a laser speed-measuring device. He was standing outside his patrol car, which was parked at the divergence of two highways in a gore—a triangular area with hash marks indicating that traffic is not permitted—when he saw Oles's vehicle cut across the gore and nearly strike his patrol car. The trooper pursued the vehicle and initiated a traffic stop. He approached the driver's side of the vehicle, advised Oles of the reason he had been stopped, and asked where he was coming from. Oles responded that he was coming from a wedding. The trooper noticed the odor of alcohol but was unsure whether it came from Oles himself or from somewhere in the vehicle. The trooper then asked Oles to step out of the car and sit in the front seat of the patrol car. During their interaction, the trooper observed Oles moving slowly and deliberately.

2

**{¶ 3}** In the front seat of the patrol car, the trooper again asked Oles where he was coming from and asked him how much alcohol he had consumed that evening. Oles responded that he had consumed four mixed drinks while at the wedding.

**{¶ 4}** The trooper then asked Oles to step out of the patrol car to perform field sobriety tests. Because Oles failed the tests, the trooper believed that he was under the influence of alcohol. He arrested Oles and placed him in the back seat of the patrol car. Oles was cited with two counts of operating a motor vehicle while under the influence ("OVI") under R.C. Chapter 4511 and a marked-lanes violation. At no time was Oles administered *Miranda* warnings.

**{¶ 5}** In the Cleveland Municipal Court, Oles moved to suppress evidence obtained during the stop, including his statements made to the trooper while he sat in the front seat of the patrol car and the results of his subsequent field sobriety tests. Oles challenged the admissibility of his statements on the grounds that they were obtained in violation of his privilege against self-incrimination under the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution and without the procedural safeguards established in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The court granted the motion to suppress.

**{¶ 6}** The city appealed, and the Eighth District affirmed the trial court's judgment. The Eighth District concluded that "[u]nder the totality of the circumstances presented in this case, we find that a reasonable person, removed from his or her own vehicle and questioned about their alcohol consumption in the passenger seat of a police cruiser would not feel free to leave." 2016-Ohio-23, 45 N.E.3d 1061, ¶ 19.

**{¶ 7}** The Eighth District, sua sponte, certified that a conflict existed between its decision and decisions of the First, Second, Fifth, Seventh, and

Eleventh District Courts of Appeals.  We accepted the following certified-conflict question:

> "[I]n the course of a traffic stop, d[o] the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution require a law enforcement officer to provide *Miranda* warnings to a suspect who is removed from his vehicle and placed in the front seat of a police vehicle for questioning?"

(Brackets sic.)  145 Ohio St.3d 1455, 2016-Ohio-2807, 49 N.E.3d 319, quoting the court of appeals' journal entry.  We also asserted jurisdiction over Cleveland's discretionary appeal and consolidated the two cases.  145 Ohio St.3d 1457, 2016-Ohio-2807, 49 N.E.3d 320.

**ANALYSIS**

{¶ 8}   In *Miranda v. Arizona*, 384 U.S. at 444, 86 S.Ct. 1602, 16 L.Ed.2d 694, the United States Supreme Court established procedural safeguards for securing the privilege against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution.  The Fourteenth Amendment to the United States Constitution makes the privilege against self-incrimination applicable to a witness in a state proceeding.  *Malloy v. Hogan*, 378 U.S. 1, 3, 84 S.Ct 1489, 12 L.Ed.2d 653 (1964).  A similar privilege is recognized in Article I, Section 10 of the Ohio Constitution.

{¶ 9}   What are now commonly known as *Miranda* warnings are intended to protect a suspect from the coercive pressure present during a custodial interrogation.  *Miranda* at 469.  A custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *Id*. at 444.  If a suspect provides responses while in custody without having first been informed of his or

her *Miranda* rights, the responses may not be admitted at trial as evidence of guilt. *Id.* at 479.

{¶ 10} In *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the Supreme Court addressed whether the scope of *Miranda* extended to the roadside questioning of a motorist during a routine traffic stop. In that case, an Ohio State Highway Patrol trooper initiated a traffic stop after observing a vehicle weave in and out of a highway lane. The trooper asked the driver to get out of the vehicle. When the driver had difficulty standing, the trooper asked him to perform a field sobriety test, which the driver failed. When asked whether he had been using intoxicants, the driver, in slurred speech, said that he had consumed two beers and had smoked several marijuana joints. The trooper then arrested the driver and transported him to jail, where he was administered a blood-alcohol test and asked additional questions. At no time were *Miranda* warnings provided. *Berkemer* at 424.

{¶ 11} In *Berkemer*, the Supreme Court recognized that although a traffic stop "significantly curtails the 'freedom of action' of the driver and passengers, if any, of the detained vehicle," the stop alone does not render a suspect "in custody" and therefore does not trigger the need for *Miranda* warnings. *Id.* at 436, 440. The court explained that "[i]f a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." *Id*. at 440.

{¶ 12} The court specifically noted the noncoercive aspects of a traffic stop that "mitigate the danger that a person questioned will be induced 'to speak where he would not otherwise do so freely.' " *Id.* at 437, quoting *Miranda*, 384 at 467, 86 S.Ct. 1602, 16 L.Ed.2d 694. For example, in contrast to a stationhouse interrogation, traffic stops are generally temporary and brief, involving a short period of questioning and possibly a citation before the driver is free to go.

*Berkemer* at 437-438. Additionally, an ordinary traffic stop is less " 'police dominated' " than interrogations that require *Miranda* warnings because the law-enforcement officer's "aura of authority" over the driver is offset by the public nature of the stop and the typical one-to-one ratio of officer to motorist. *Id.* at 438-439.

{¶ 13} Ultimately, in *Berkemer*, the court held that the only relevant inquiry is how a reasonable person in the suspect's position would have understood his or her situation. 468 U.S. at 442, 104 S.Ct. 3138, 82 L.Ed.2d 317. Because the motorist in *Berkemer* was not able to demonstrate that he had been subjected to "restraints comparable to those associated with a formal arrest," the court concluded that he had not been taken into custody for purposes of *Miranda*. *Id.* at 441-442.

{¶ 14} We applied *Berkemer* in *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, in which a trooper questioned the subject of a traffic stop while the subject was seated in the front seat of a police vehicle. In *Farris*, the trooper smelled marijuana in a vehicle after initiating a traffic stop for speeding. The trooper then asked the driver to step out of the car, performed a pat-down search of the driver, took the driver's keys, and asked the driver to sit in the front seat of his police vehicle. In the front seat, the following occurred:

> [The trooper] told Farris that he had smelled marijuana in the car. Without administering a *Miranda* warning or seeking consent to search the car, [the trooper] asked Farris about the smell of marijuana. Farris told [the trooper] that his housemates had been smoking marijuana when he left the house. [The trooper] told Farris that he was going to search the car and then specifically asked whether there were any drugs or drug devices in the car. Farris

> admitted that there was a "bowl," i.e., a marijuana pipe, in a bag in
> his trunk.

*Id.* at ¶ 3. After this admission, the trooper administered *Miranda* warnings and then repeated the same questions. *Id.* at ¶ 4.

{¶ 15} Citing *Berkemer*, we concluded that a reasonable person in Farris's position would have understood himself or herself to be in custody while sitting in the police vehicle. *Id.* at ¶ 14. Specifically, the trooper's treatment of Farris—patting him down, taking his keys, instructing him to sit in the police vehicle, and telling Farris that he was going to search the car due to the smell of marijuana—permitted a reasonable belief that Farris could not leave and would be detained long enough for the officer to conduct the vehicle search. *Id.* Therefore, Farris's statements obtained without *Miranda* warnings were inadmissible. *Id*. at ¶ 13-14.

{¶ 16} Since *Farris*, decisions of our courts of appeals, including the conflict cases identified by the Eight District Court of Appeals, have distinguished *Farris* and concluded that officers who questioned suspects in the front seat of police vehicles during traffic stops did not engage in custodial interrogations.

{¶ 17} In *State v. Brocker*, 11th Dist. Portage No. 2014-P-0070, 2015-Ohio-3412, ¶ 18, the Eleventh District held that the questioning of a driver inside a police vehicle did not rise to the level of a custodial interrogation because the detention in the front seat was brief, the questioning was not intimidating, and the trooper neither took the driver's keys nor searched the driver's vehicle. *See also State v. Serafin*, 11th Dist. Portage No. 2011-P-0036, 2012-Ohio-1456, ¶ 38 (no custodial interrogation when the driver was subjected to a pat-down search before the trooper questioned him in the front seat of the police vehicle).

{¶ 18} In *State v. Kraus*, 1st Dist. Hamilton Nos. C-070428 and C-070429, 2008-Ohio-3965, ¶ 13-14, the First District held that a driver's questioning in the front seat of a police vehicle was not a custodial interrogation because the intrusion

was minimal in that the driver was not searched or handcuffed, was permitted to keep his keys, and was not subjected to a lengthy period of questioning. *See also State v. Leonard*, 1st Dist. Hamilton No. C-060595, 2007-Ohio-3312, ¶ 17-23 (no custodial interrogation of driver in front seat of police vehicle because intrusion was minimal in that neither the driver nor his vehicle was subjected to a search, the driver was not handcuffed, the driver retained his keys, and the detention was brief).

{¶ 19} In *State v. Crowe*, 5th Dist. Delaware No. 07CAC030015, 2008-Ohio-330, ¶ 35, the Fifth District distinguished *Farris*, noting that the driver in *Crowe* was not subjected to a pat-down search before being placed in the front seat of the cruiser, was not handcuffed, was permitted to keep his keys, and was not subjected to a vehicle search or a lengthy detention. *See also State v. Mullins*, 5th Dist. Licking No. 2006-CA-00019, 2006-Ohio-4674, ¶ 30.

{¶ 20} And in *State v. Coleman*, 7th Dist. Mahoning No. 06 MA 41, 2007-Ohio-1573, ¶ 37, the Seventh District distinguished *Farris* and determined that an officer who asked a driver seated in the front seat of the officer's police vehicle how much alcohol the driver had consumed had not conducted a custodial interrogation.

{¶ 21} These decisions illustrate that determining whether front-seat questioning during a traffic stop is a custodial interrogation requiring *Miranda* warnings demands a fact-specific inquiry that asks whether a reasonable person in the suspect's position would have understood himself or herself to be in custody while being questioned in the front seat of the police vehicle. *Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, at ¶ 14; *Berkemer*, 468 U.S. at 442, 104 S.Ct. 3138, 82 L.Ed.2d 317.

{¶ 22} Determining whether the totality of the circumstances in a particular case indicates that a custodial interrogation occurred requires a more exacting inquiry by the courts than the simple application of a bright-line rule of law. Indeed, the Supreme Court in *Berkemer* acknowledged that its decision would leave lower

8

courts with occasional difficulty in deciding whether a suspect was "in custody" for *Miranda* purposes. *Berkemer* at 441. But the court warned against the lure of establishing a bright-line rule that *Miranda* applies to all traffic stops or that *Miranda* does not apply until a formal arrest. *Id.*

{¶ 23} Similarly, here, we decline to adopt the bright-line rule that questioning a suspect in the front seat of a police vehicle during a traffic stop rises to the level of a custodial interrogation. In some cases, such as *Farris*, the totality of the circumstances will demonstrate that questioning a suspect in the front seat of a police vehicle is a custodial interrogation that requires *Miranda* warnings. But front-seat questioning, by itself, does not necessarily constitute a custodial interrogation.

{¶ 24} Drawing from *Berkemer*, *Farris*, and subsequent decisions of our courts of appeals, we identify the following factors that may provide guidance: questioning a suspect during a traffic stop in the front seat of a police vehicle does not rise to the level of a custodial interrogation when (1) the intrusion is minimal, (2) the questioning and detention are brief, and (3) the interaction is nonthreatening or nonintimidating.

{¶ 25} We apply these factors here.

{¶ 26} The trooper in this case asked Oles to sit in the front seat of his patrol car and did not perform a pat-down search. Unlike the officer in *Farris*, the trooper here did not indicate that he wanted to search Oles's vehicle and permitted Oles to keep the vehicle keys during the traffic stop. The setting was in public view on the highway shoulder, and the trooper performed procedures typical of a traffic stop. Thus, we find that the intrusion was minimal.

{¶ 27} Second, the record demonstrates that Oles's questioning and his detention in the patrol car were both short in duration. The trooper had a brief conversation with Oles to discern whether the odor of alcohol originated from Oles himself or from somewhere else in his car. Once Oles revealed how many drinks

he had consumed that evening, the trooper began the field sobriety tests. The brevity of the interaction underscores the ordinary nature of the traffic stop and the noncoercive nature of the questioning.

{¶ 28} Third, the interaction between Oles and the trooper was nonthreatening and nonintimidating. Oles was not handcuffed. There is no indication that the questioning was overly repetitive or that Oles objected to any of the trooper's requests or questions. In the vehicle, the trooper asked Oles the kind of general, on-the-scene questions that are typical of a routine traffic stop in which alcohol is suspected to be a factor. This differs from the kind of interrogation—designed to pressure a suspect to confess to illegal conduct—that was of particular concern to the Supreme Court in *Miranda*. And it differs from the interaction in *Farris*, in which the trooper made it known that he suspected illegal conduct (i.e., that he smelled marijuana), told Farris that he would search the car, and then asked about illegal drugs and drug paraphernalia that he might find in the car.

{¶ 29} When viewing the totality of the circumstances in this case, we find that a reasonable person in Oles's position would not have understood himself or herself to be in custody. The trooper's questioning of Oles in the front seat of the patrol car did not rise to the level of a custodial interrogation requiring *Miranda* warnings.

{¶ 30} Oles contends that his belief that he was not free to leave should be dispositive. The court of appeals also articulated the test this way, finding that a reasonable person would not have felt free to leave. But the relevant inquiry is whether a reasonable person in the suspect's position would have understood himself or herself to be *in custody*. This nuance is important and well reasoned. If the inquiry were whether the driver felt free to leave, then every traffic stop could be considered a custodial interrogation because "few motorists would feel free either to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so," *Berkemer*, 468 U.S. at 436, 104 S.Ct. 3138,

82 L.Ed.2d 317. And a law-enforcement officer, in the midst of investigating a traffic stop and performing all its attendant procedures, would not consider a driver free to leave unless given permission. But "not free to leave" and "in custody" are distinct concepts.

{¶ 31} For purposes of the constitutional privilege against self-incrimination, the test is not whether the individual feels free to leave but whether the situation "exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights." *Id.* at 437. Considering the totality of the circumstances here, we conclude that no constitutional violation occurred.[1]

{¶ 32} Because we reverse the judgment affirming the suppression of Oles's statements and the results of the field sobriety tests, we need not reach the city's second proposition of law, regarding the independent-source doctrine.

## CONCLUSION

{¶ 33} The placement of a suspect in the front seat of a police vehicle during a traffic stop is not alone determinative of whether the suspect has been subjected to a custodial interrogation. The relevant inquiry is whether, under the totality of the circumstances, a reasonable person in the suspect's position would have understood himself or herself to be in custody. Accordingly, we answer the

---

[1] In *Farris*, we determined that Article I, Section 10 of the Ohio Constitution provides greater protection to criminal defendants than the Fifth Amendment to the United States Constitution with respect to the admissibility at trial of physical evidence seized as a result of unwarned statements made in custody without the benefit of *Miranda* warnings. 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, at ¶ 48. We held in *Farris* that such evidence is inadmissible under Article I, Section 10, whereas a plurality of the United States Supreme Court had agreed that the admission of such evidence does not violate the Self-Incrimination Clause of the Fifth Amendment, *United States v. Patane*, 542 U.S. 630, 637, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004).

Here, however, that issue is not present because we conclude that Oles was not subjected to a custodial interrogation, and therefore, the need for *Miranda* warnings was not triggered. We decline to extend our holding in *Farris* regarding the protection offered by the Ohio Constitution beyond the scope of that case, particularly without argument from the parties regarding whether the Ohio Constitution provides greater protection than the Fifth Amendment in this scenario.

certified question in the negative, reverse the judgment of the Eighth District Court of Appeals, and remand the cause for further proceedings.

Judgment reversed

and cause remanded.

O'DONNELL, KENNEDY, FRENCH, FISCHER, and DEWINE, JJ., concur.

O'NEILL, J., dissents with an opinion.

_____

**O'NEILL, J., dissenting.**

**{¶ 34}** I must respectfully dissent. I would affirm the judgment of the Eighth District Court of Appeals and hold that custody began and *Miranda* warnings were required as soon as the trooper directed appellee, Benjamin Oles, to sit in the front seat of the patrol car.

**{¶ 35}** A reasonable person who has been stopped for any traffic violation and asked to have a seat in a police vehicle—whether front seat or back seat, whether handcuffed or not—would believe that he or she is in custody at that point. He or she would certainly not feel free to leave—and, as the trooper testified in this case, Oles was not free to leave.

**{¶ 36}** To follow the majority's logic, one would have to accept the proposition that a citizen sitting in the front seat of a police cruiser at the officer's request would be free to state, "Well, I have had enough of this chat" and then reach, furtively or otherwise, for the door handle and exit the vehicle. Common sense and the safety of both the officer and the citizen require a wholly different conclusion.

**{¶ 37}** In fact, technology has completely changed the landscape since *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was decided back in 1966, over 50 years ago. Police vehicles are now equipped with computers, giving officers access to a world of information while seated inside

them. Every police vehicle is now a police station on wheels. Being directed to have a seat in a police vehicle is akin to being taken to the police station.

**{¶ 38}** As the United States Supreme Court stated in *Berkemer v. McCarty*, "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). The Eighth District was exactly right when it stated that "a reasonable person, removed from his or her own vehicle and questioned about their alcohol consumption in the passenger seat in a police cruiser would not feel free to leave." 2016-Ohio-23, 45 N.E.3d 1061, ¶ 19. In fact, it would be "unrealistic and irrational" for a reasonable person to believe otherwise. *Id.* at ¶ 20. I fail to see how any other conclusion is possible.

**{¶ 39}** This is a different situation than what occurs during a typical traffic stop or a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In those circumstances, the officer has stopped the suspect because of observed behavior and is permitted to begin a preliminary investigation by asking a few questions. Once the officer directs the suspect out of his or her car or off the sidewalk and into the police vehicle, a fundamental change has occurred. Once the suspect is instructed to enter the police vehicle, that person's actions are now being controlled by the police officer. A reasonable person in the suspect's position would feel that he or she is, at that point, under the control of the officer and in custody. The suspect's freedom of action has been curtailed in a significant way.

**{¶ 40}** The fundamental question in police-custody cases has always been a matter of where we should draw the line. The result has been the functional equivalent of gerrymandering. Courts have been enabled to draw the line in and around the countless fact patterns that have arisen. It has reached the point at which neither the police nor trial courts can safely rely on an established rule of law. The time has come to change that and define an easily articulable rule: if an officer is

instructing a suspect to have a seat in a police vehicle, then *Miranda* warnings are required.  Period, end of sentence.

**{¶ 41}** Whether the suspect is instructed to sit in the front seat or back seat should not matter, nor whether the suspect is patted down, searched, or handcuffed.  Once that suspect is placed in the police station on wheels, he or she is in custody.  If the officer wants to ask some preliminary investigative questions, that can be accomplished while the suspect is still in his or her own vehicle, or standing outside it.  Not only would this be an easily understood rule of law, but it also makes sense.

**{¶ 42}** I must dissent.

_____

Barbara Langhenry, Cleveland Director of Law, Kimberly G. Barnett-Mills, Interim Chief Prosecutor, and Jonathan L. Cudnik, Assistant Prosecutor, for appellant.

Patituce & Associates, L.L.C., Joseph C. Patituce, and Megan M. Patituce, for appellee.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel T. Van and Anthony T. Miranda, Assistant Prosecuting Attorneys, urging reversal for amici curiae Ohio Prosecuting Attorneys Association and Cuyahoga County Prosecutor's Office.

Russell S. Bensing, urging affirmance for amicus curiae Ohio Association of Criminal Defense Lawyers.

_____