[Cite as *State v. Cody*, 2022-Ohio-544.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29219 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-797 |
| | : | |
| AARON DARNELL CODY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 25th day of February, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0084470, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

KIRSTEN KNIGHT, Atty. Reg. No. 0080433, P.O. Box 137, Germantown, Ohio 45327
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Aaron Cody appeals from his convictions for drug possession. He argues that his statements to police should have been suppressed because officers failed to provide a *Miranda* warning before questioning him. We conclude that a warning was not required, because Cody was not in custody for *Miranda* purposes. And we conclude that drugs concealed on his person would have been inevitably discovered during a search incident to his arrest. Hence, we affirm.

## I. Factual and Procedural Background

{¶ 2} On March 1, 2019, Sergeant Jason Rhodes and his partner were working in plain clothes in an unmarked vehicle. Rhodes had worked for the Dayton Police Department for almost 13 years, had been in the drug unit as a detective for about 6 years, and had significant training involving the use of confidential informants, typing search warrants, purchasing drugs in an undercover capacity, and other drug operations. During undercover operations, Rhodes travelled through the city watching for drug transactions at various hot spots of criminal activity. On this day, he was watching the Bancroft Apartments, which Rhodes described as a "hotbed" of criminal activity, with the police receiving numerous calls about drug activity and violent crimes there. Sgt. Rhodes had personally seen drug activity there in the past, including hand-to-hand, car-to-car, and hand-to-car drug transactions in the parking lot. Most often, a vehicle would pull into the parking lot and someone either standing outside or coming from one of the apartments would approach the car with the drugs and the buyer would drive away. According to Rhodes, it is quite common for people to come from outside the city or county to buy drugs.

{¶ 3} While watching the Bancroft Apartments parking lot at mid-afternoon, Sgt. Rhodes saw a 2016 silver Kia Forte back into a parking space. Using high-powered binoculars, Rhodes could see two people in the vehicle and read the vehicle's Warren County, Ohio, license plate. A few minutes later, a male came out of one of the apartment buildings and made contact first with the driver, a female, and then with the passenger, later identified as Cody. Cody handed the man a "wad" of cash, which the man leafed through, appearing to count it. The man put the money in his pocket and handed Cody a clear plastic baggie containing a chunk of something white that looked to be larger than a golf ball but smaller than a baseball. The Kia driver then drove away. Based on his training and experience, Sgt. Rhodes believed that he had witnessed a drug transaction. He radioed for a marked cruiser to perform a traffic stop on the Kia, explaining his suspicions about what he had just seen.

{¶ 4} Around 3:20 p.m., a marked cruiser stopped the Kia at the bottom of the Main Street exit off U.S. 35. The officers removed both Cody and the female driver from the car and placed them in the back seat of the cruiser for a short time. A second marked cruiser arrived, and the driver was removed and placed in that cruiser. Soon after, Cody was asked to step out and was patted down. Meanwhile, Sgt. Rhodes had arrived on scene, and officers began searching the Kia. Officers asked Cody where the drugs were, and he told them that the baggie was in a cigarette pack in the passenger-side door. Sgt. Rhodes retrieved the cigarette pack and found a clear plastic bag containing what he suspected was fentanyl or cocaine. Cody was then handcuffed, placed under arrest, and put back into the cruiser.

{¶ 5} Notably, the drugs in the cigarette pack were significantly smaller than the

amount Sgt. Rhodes had seen given to Cody at the Bancroft Apartments, but the officers could not find any other drugs in the Kia. So while in the back of the cruiser, officers asked Cody where the drugs he had bought at the Bancroft Apartments were. Cody repeatedly denied he had any more drugs on him. Eventually, though Cody admitted that the drugs were hidden in his pants; he retrieved them and turned them over.

{¶ 6} On May 30, 2019, Cody was indicted on one count of aggravated possession of drugs, in violation of R.C. 2925.11(A), a second-degree felony, and one count of possession of a fentanyl-related compound, in violation of R.C. 2925.11(A), a fifth-degree felony. Cody filed a motion to suppress all evidence obtained as the result of an unlawful search and seizure and any statements he had made. Cody argued that the officers had no basis to extend the stop in order to search the car and had no justification for searching his person. Cody also argued that any statements he had made to the police officers must be suppressed as fruit of the poisonous tree or due to violations of his *Miranda* rights, because he was not given a *Miranda* warning before being questioned about the location of the drugs.

{¶ 7} A suppression hearing was held at which Sgt. Rhodes testified and video and audio from a cruiser camera were presented. On November 24, 2020, the trial court sustained Cody's motion to suppress in part and overruled it in part, but found that none of the evidence would be excluded because it would have inevitably been discovered. The court concluded that when Cody made the statements about the drugs in the car, he had not been in custody for *Miranda* purposes, so both his statements and the drugs found in the car were admissible. But the court concluded that Cody had been in custody when he was subsequently asked about the drugs he had bought, so a *Miranda* warning

had been needed, and his statements about the drugs in his pants must be suppressed. Nevertheless, the court concluded that the drugs concealed in Cody's pants were admissible, because they would have been inevitably discovered during a search incident to his arrest for the drugs found in the car.

{¶ 8} In June 2021, Cody pleaded no contest to the indicted charges. The trial court sentenced him to a total of two years in prison.

{¶ 9} Cody appeals.

## II. Analysis

{¶ 10} Cody's sole assignment of error alleges that the trial court erred by refusing to suppress evidence.

{¶ 11} "Appellate review of a ruling on a motion to suppress presents a mixed question of fact and law. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. The appellate court must decide questions of law de novo, without deference to the lower court's legal conclusions." (Citations omitted.) *State v. Tidwell*, 165 Ohio St.3d 57, 2021-Ohio-2072, 175 N.E.3d 527, ¶ 18.

{¶ 12} Cody argues that the statement he gave about the drugs in the cigarette pack should have been suppressed because it was elicited during custodial interrogation without a *Miranda* warning. He argues that, had he been given the warning, none of the drugs would have been discovered.

*No custodial interrogation*

{¶ 13} Custodial interrogation for *Miranda* purposes is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of

his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "The relevant inquiry is whether, under the totality of the circumstances, a reasonable person in the suspect's position would have understood himself or herself to be in custody," *Cleveland v. Oles*, 152 Ohio St.3d 1, 2017-Ohio-5834, 92 N.E.3d 810, ¶ 33, that is, subjected to "restraints comparable to those associated with a formal arrest," *Berkemer v. McCarty,* 468 U.S. 420, 441, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).

**{¶ 14}** A person temporarily detained during an investigatory traffic stop is not "in custody" for purposes of *Miranda. Berkemer* at 440. The Ohio Supreme Court has held that "[t]he placement of a suspect in the *front* seat of a police vehicle during a traffic stop is not alone determinative of whether the suspect has been subjected to a custodial interrogation." (Emphasis added.) *Oles* at ¶ 33. And we have held that being placed in the back of a police cruiser for a short time does not render a suspect in custody. *See State v. Foxx*, 2014-Ohio-235, 7 N.E.3d 615, ¶ 17 (2d Dist.), citing *State v. Lozada*, 92 Ohio St.3d 74, 76, 748 N.E.2d 520 (2001) ("asking a driver or occupant of a vehicle to sit in the officer's cruiser to facilitate a traffic stop is not itself illegal"). *See also State v. Polen*, 1st Dist. Hamilton Nos. 0050959, C-050960, 2006-Ohio-5599, ¶ 13 (holding that a police officer was justified in placing a defendant in the cruiser to ensure safety). As we have explained, "[t]he mere fact that an individual is sitting in the back seat of a police cruiser, with rear doors that do not open from the inside, without more, is not sufficient to establish custody. But if the police take actions that would lead a reasonable person in the defendant's position to believe that he was going to be detained indefinitely, the encounter is custodial." (Citations omitted.) *State v. Moody*, 2012-Ohio-3390, 974 N.E.2d 1273, ¶ 13

(2d Dist.).

{¶ 15} When Cody was first asked where the drugs were, he was standing outside the police cruiser. He had not been arrested, and his detention did not resemble a formal arrest. He was not in handcuffs and had not been told that he could not leave or that he was under arrest. The questioning was very brief and was not threatening or intimidating, it occurred only about four minutes after Cody was stopped. While it is likely that Cody did not feel free to leave, that is not the test. *See Oles* at ¶ 31 ("the test is not whether the individual feels free to leave"). Rather, the test is "whether the situation 'exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights.' " *Id.* The totality of the circumstances in this case established that this was not Cody's situation. Hence, no *Miranda* warning was required.

*Discovery of the drugs was inevitable*

{¶ 16} We agree with the trial court's conclusion that, as a result of drugs having been found in the cigarette pack, the drugs that Cody was concealing in his pants would inevitably have been discovered. Under the doctrine of inevitable discovery, "illegally obtained evidence may be admitted in a proceeding once the state establishes that the evidence would inevitably have been discovered in the course of a lawful investigation." *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 27. Here, once the drugs in the cigarette pack were found, which Cody admitted were his, officers had probable cause to believe that Cody had committed drug offenses and could lawfully arrest him, which they did. Incident to the arrest, officers would have been permitted to perform a search of his person. *See State v. Klase*, 2019-Ohio-3392, 131 N.E.3d 1054,

¶ 24 (2d Dist.). A search incident to arrest is not simply a pat-down for weapons but " 'a full search of the arrestee's person for contraband or evidence of a crime.' " *State v. Todd*, 2d Dist. Montgomery No. 23921, 2011-Ohio-1740, ¶ 31, quoting *State v. Gagaris*, 12th Dist. Butler No. CA2007-06-142, 2008-Ohio-5418, ¶ 16. When officers did a full search of Cody, they would have inevitably discovered the drugs concealed in his pants.

### III. Conclusion

**{¶ 17}** The trial court correctly concluded that Cody was not in custody for *Miranda* purposes and that the drugs found on his person would have been inevitably discovered. The sole assignment of error is overruled. The trial court's judgment is affirmed.

. . . . . . . . . . . .

WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Kirsten Knight
Hon. Michael W. Krumholtz