[Cite as *State v. Martinez*, 2025-Ohio-4786.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-11-021 |
| | : | <u>OPINION AND</u> |
| - vs - | | <u>JUDGMENT ENTRY</u> |
| | : | 10/20/2025 |
| ALEXIS A. MARTINEZ, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI20240037

Nick Adkins, Madison County Prosecuting Attorney, and Rachel M. Price, Assistant Prosecuting Attorney, for appellee.

The Law Office of Eric J. Allen, Ltd., and Eric J. Allen, for appellant.

## **O P I N I O N**

**M. POWELL, J.**

{¶ 1}   Appellant, Alexis Martinez, appeals his conviction in the Madison County Court of Common Pleas for possession of marijuana.

{¶ 2} Appellant was indicted in May 2024 on one count of marijuana possession, a felony of the second degree, in violation of R.C. 2925.11(A) and (C)(f)(3). The charge stemmed from the seizure of 51 pounds of marijuana recovered from the vehicle appellant was driving. Appellant moved to suppress evidence obtained during the traffic stop. The trial court held a hearing on the motion on August 9, 2024.

{¶ 3} At the hearing, Ohio State Highway Patrol Sergeant Drew Kuehne testified that he was sitting in his patrol car in a crossover on I-70 on March 21, 2024. While monitoring traffic, Sergeant Kuehne observed a white Chrysler Pacifica van travelling too close to another vehicle in the left lane. As the Pacifica passed his patrol car, Sergeant Kuehne noticed that its sole occupant had his hand on top of the steering wheel and his left shoulder hunched up as though trying to conceal his face. The sergeant decided to follow the Pacifica. As the sergeant caught up to the Pacifica, he observed it move over to the middle lane directly in front of a semi-truck, causing the truck to slow down. Having observed two traffic violations, Sergeant Kuehne initiated a traffic stop of the Pacifica.

{¶ 4} Appellant was the Pacifica's driver. Sergeant Kuehne approached the front passenger side of the vehicle, asked for appellant's driver's license, and told appellant about the traffic violations. Upon determining that the Pacifica was a rental, Sergeant Kuehne also requested the rental agreement. Appellant provided a State of Washington driver's license and rental documentation which indicated that the Pacifica had been rented by a third party, not appellant, for a week for $1,388 and that it was scheduled to be returned in Oregon five days after the traffic stop. Further, the rental documentation provided by appellant did not include his name. During this encounter, appellant exhibited signs of nervousness such as a trembling voice and stuttering to answer basic questions, and Sergeant Kuehne observed appellant's carotid pulsing on the right size of his neck.

{¶ 5} Sergeant Kuehne asked appellant to step out of the Pacifica. The sergeant

conducted a consensual pat-down of appellant for weapons and had him sit in the patrol car's front passenger seat. Sergeant Kuehne sat in the driver's seat. Appellant was not handcuffed or told he was under arrest, and the patrol car's front passenger door was not locked. While Sergeant Kuehne was entering information on the patrol car's laptop and waiting for dispatch to advise him regarding appellant's driver's license, the existence of any outstanding warrants, and the rental agreement, he questioned appellant about his travel plans. Appellant indicated that he was traveling from Oregon to West Viriginia to stay with an uncle, that a friend had rented the Pacifica because he did not have much money, and that he was driving instead of flying so he could see the states. During this exchange, the sergeant noticed that appellant was sweating and "stomach breathing."

{¶ 6} While this exchange was taking place, a canine unit was dispatched to the scene to conduct an open-air sniff around the Pacifica. After the canine alerted on the Pacifica, indicating the presence of drugs, Sergeant Kuehne advised appellant that the canine alert gave officers probable cause to search the Pacifica and that appellant was detained but not under arrest. The sergeant then advised appellant of his *Miranda* rights. Appellant indicated he understood his rights. Upon questioning, appellant admitted there was a large quantity of marijuana in the Pacifica and that he had been paid $5,000 to transport it. The Pacifica was taken to the highway patrol post. A search of the vehicle yielded 51 pounds of marijuana in 51 one-pound vacuum-sealed individual bags that were found in two large black trash bags.

{¶ 7} Following the presentation of the evidence, the trial court orally denied the motion to suppress. The trial court journalized its decision and entry denying the suppression motion on September 18, 2024. As pertinent to this appeal, the trial court determined that Sergeant Kuehne had probable cause to initiate a traffic stop based upon violations of R.C. 4511.34(A) and 4511.27(A)(1)—following too close and unsafe lane

- 3 -

change, respectively—that there was no undue delay from the time of the initial stop until the time the canine alerted on the Pacifica eight minutes later, and that appellant had been properly Mirandized and waived those rights before making incriminating statements.

{¶ 8} The matter proceeded to a jury trial on September 10, 2024. Sergeant Kuehne, another state trooper, and Danielle Sandor, a criminalist with the Ohio State Highway Patrol Crime Laboratory, testified on behalf of the State. Appellant did not testify or present witnesses on his own behalf.

{¶ 9} The record shows that the substance found in the bags recovered from the Pacifica was tested and analyzed by Sandor and Joann Lami, also a criminalist with the Highway Patrol Crime Laboratory. Lami conducted a qualitative analysis of all 51 bags, which included weighing and physically examining the substance in the bags. Using hypergeometric sampling, Sandor randomly selected and conducted a quantitative analysis of 18 of the 51 bags. Sandor and Lami then prepared a joint report which was admitted into evidence without objection. Lami's portion of the report concluded that "a total of 51 bags were present with a total combined weight of 23145.8 grams +/- 16.8 grams" and that her analysis "identified the presence of plant material of the genus cannabis." Lami's portion of the report further concluded that at least 20,000 grams of the substance tested was marijuana as legally defined in Ohio.

{¶ 10} Sandor testified that a quantitative analysis determines the amount of THC and THCA in a plant material, that both hemp and marijuana fall into the cannabis plant category, that hemp is a cannabis plant with less than .3 percent THC, and that marijuana is anything above that THC concentration level. Sandor testified that all the bags she tested were above .3 percent THC. The joint report shows that the THC concentration in the 18 tested bags ranged from 9.6 percent to 21.8 percent.

{¶ 11} The jury found appellant guilty as charged. The trial court sentenced appellant to an indefinite prison term of five to seven-and-one-half years.

{¶ 12} Appellant now appeals, raising two assignments of error.

{¶ 13} Assignment of Error No. 1:

THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS.

{¶ 14} Appellant argues the trial court erred in denying his motion to suppress evidence obtained and seized during the traffic stop. Appellant does not challenge the initial stop of the Pacifica or the probable cause to search the vehicle once the canine alerted. Instead, appellant asserts that the duration of the traffic stop beyond the time period necessary to issue a citation for the traffic violations without any reasonable, articulable suspicion of additional criminal activity was unreasonable. Appellant further asserts that the statements he made while seated in Sergent Kuehne's patrol car were the product of custodial interrogation and warranted suppression because he was not advised of his *Miranda* rights until after the canine alerted.

{¶ 15} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 2015-Ohio-828, ¶ 8 (12th Dist.). Therefore, when reviewing the denial of a motion to suppress, a court of appeals is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 2007-Ohio-3353, ¶ 12

(12th Dist.).

## Duration of the Traffic Stop

{¶ 16} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable automobile stops." *Bowling Green v. Godwin*, 2006-Ohio-3563, ¶ 11. When the police stop a vehicle based on probable cause that a traffic violation has occurred, the stop is reasonable under the Fourth Amendment. *Id.*

{¶ 17} When conducting a stop of a motor vehicle for a traffic violation, an officer may detain the vehicle for a time sufficient to investigate the reasonable, articulable suspicion for which the vehicle was initially stopped. *State v. Hernandez*, 2007-Ohio-5190, ¶ 13 (12th Dist.). The duration of the stop is limited to the time necessary to effectuate the purpose for which the stop was made, but also includes the time necessary to run a computer check on the driver's license, registration, and vehicle plates. *Id.* However, the detention may continue beyond this time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop. *Id.*

{¶ 18} In addition, a lawfully detained vehicle may be subjected to a canine sniff of the vehicle's exterior even without the presence of a reasonable suspicion of drug-related activity. *State v. Howard*, 2006-Ohio-5656, ¶ 17 (12th Dist.). Both Ohio courts and the United States Supreme Court have determined that "the exterior sniff by a trained narcotics dog to detect the odor of drugs is not a search within the meaning of the Fourth Amendment to the Constitution." *Id.*; *United States v. Place*, 462 U.S. 696 (1983). Thus, a canine sniff of a vehicle may be conducted during the time period necessary to effectuate the original purpose of the stop. *Howard* at ¶ 17. Moreover, if a trained narcotics dog alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable

cause to search the vehicle for contraband. *Id.*

{¶ 19} Upon reviewing the record, we find that Sergeant Kuehne did not unreasonably detain appellant beyond that which was necessary to conduct the investigation. Upon being pulled over for traffic violations, appellant provided a State of Washington driver's license and rental documentation which indicated that the Pacifica had been rented by a third party, not appellant. In addition, the rental documentation provided by appellant did not include his name. After this initial contact, as the two men sat in the patrol car and Sergeant Kuehne was entering information on the patrol car's laptop and waiting for dispatch to advise him regarding appellant's driver's license, the existence of outstanding warrants, and the rental agreement, the canine unit arrived on the scene. Before Sergeant Kuehne was able to complete the routine checks described above, the canine alerted on the Pacifica. The canine alert occurred eight minutes after the sergeant had initiated the traffic stop.

{¶ 20} Based upon the totality of the circumstances, the trial court did not err in finding that the duration of the traffic stop did not violate appellant's Fourth Amendment rights and denying the motion to suppress on this basis.

### Custodial Interrogation

{¶ 21} The *Miranda* warnings serve as prophylactic safeguards to protect a person's Fifth Amendment privilege against compelled self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). The police are not required to issue *Miranda* warnings to every individual they question. *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). Rather, such warnings must be issued only when the police subject a suspect to "custodial interrogation." *Miranda* at 444; *State v. Biros*, 1997-Ohio-204, ¶ 40.

{¶ 22} A custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom

of action in any significant way." *Cleveland v. Oles*, 2017-Ohio-5834, ¶ 9. The relevant inquiry is not whether the individual feels free to leave but whether a reasonable person in the suspect's position would have understood himself or herself to be in custody. *Id.* at ¶ 30-31. Questioning a suspect during a traffic stop in the front seat of a police vehicle does not rise to the level of a custodial interrogation when (1) the intrusion was minimal, (2) the questioning and detention were brief, and (3) the interaction was nonthreatening or nonintimidating. *Id.* at ¶ 24.

{¶ 23} The record clearly shows that appellant did not admit there was a large quantity of marijuana in the Pacifica and that he had been paid $5,000 to transport it *until after* the canine alerted on the Pacifica and appellant was then advised of his *Miranda* rights. Prior to appellant being Mirandized, the fact Sergeant Kuehne questioned him while the two men sat in the patrol car does not mean that appellant was in custody. Sergeant Kuehne conducted a consensual pat-down of appellant for weapons and had him sit in the patrol car's front passenger seat. Sergeant Kuehne did not indicate he wanted to search the Pacifica. The setting was in public view on the highway shoulder, and the sergeant performed procedures typical of a traffic stop. *Oles* at ¶ 26. Appellant was not handcuffed or told he was under arrest, and the patrol car's front passenger door was unlocked. The interaction between appellant and Sergeant Kuehne was nonthreatening and nonintimidating, and the questioning and appellant's detention in the patrol car were both short in duration. Sergeant Kuehne questioned appellant about his travel plans, including his destination, why he drove instead of flying, and the person he was to visit. While these questions inquired into the nature and destination of appellant's trip from Oregon to West Virginia, they were not inherently incriminating. Further, none of the pre-*Miranda* statements from appellant directly led to the discovery of the marijuana in the Pacifica.

{¶ 24} Based upon the totality of the circumstances, we find that Sergeant Kuehne's questioning of appellant in the front seat of the patrol car before the canine alerted did not rise to the level of a custodial interrogation requiring *Miranda* warnings. The trial court, therefore, did not err in finding that appellant's Fourth Amendment rights were not violated and denying the motion to suppress on this basis.

{¶ 25} Appellant's first assignment of error is overruled.

{¶ 26} Assignment of Error No. 2:

THE EVIDENCE PRODUCED BY THE STATE OF OHIO WAS NOT SUPPORTED BY A MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 27} Appellant argues that his conviction for marijuana possession is against the manifest weight of the evidence because the State failed to prove that the substance seized from the Pacifica was marijuana and not hemp.

{¶ 28} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Peyton*, 2017-Ohio-243, ¶ 42 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*

{¶ 29} Appellant was convicted of possessing marijuana in violation of R.C. 2925.11(A), which provides, "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Under R.C. 2925.11(C)(3)(f), possession of marijuana is a felony of the second degree if the amount of the drug

involved equals or exceeds 20,000 grams but is less than 40,000 grams.

{¶ 30} Appellant challenges Sandor's testimony, asserting (1) that she testified cannabis and hemp look alike, (2) that she could not find out where the samples came from, (3) that she was not familiar with decarboxylation, and (4) that although the samples she tested contained both THC and THCA, she could not define how much THCA was in the samples.

{¶ 31} The record does not support appellant's assertions. Sandor testified that cannabis and hemp "can look similar visually;" however, she was not asked to differentiate between the two and it was Lami's task to conduct the qualitative analysis. Regarding the origin of the samples, Sandor testified that she never knows where the samples come from, i.e. where the substance was actually grown, but that regardless of the origin, she can determine whether the sample is hemp or marijuana. Appellant fails to show why or how this is of any significance.

{¶ 32} Contrary to appellant's suggestion, Sandor did not testify she did not know what decarboxylation was. Rather, she testified she was familiar with it but not enough to give an opinion as to whether it can change the structure of a substance. On direct examination, Sandor testified she conducted the quantitative analysis, using an instrument and technique called LC-DAD (Liquid Chromatography with Diode Array Detector). Sandor explained that prior to conducting the analysis, the substance must first be dried and is accordingly placed into an oven for no more than 24 hours at a temperature of less than 500 degrees. Once dried, the substance is ground up into "a sort of fine powder" to which solvents are added. The resulting substance is injected into a column, which separates different compounds within the substance, and it then goes through the DAD part, which passes ultraviolet light through the substance. Readings from the LC-DAD are then plugged into an Ohio Revised Code "verified and approved

worksheet that has locked cells," which calculates the total percentage of THC. Sandor testified that THC and THCA are both included in the readings from the LC-DAD.

{¶ 33} On cross-examination, Sandor confirmed that readings from the LC-DAD instrument provide the total concentration of THC and the total concentration of THCA in the tested samples. The readings are then plugged into a formula set by the Ohio Revised Code to determine the total amount of THC. In other words, the THC and THCA numbers obtained from the LC-DAD are combined to arrive at the total amount of THC. Sandor agreed that the joint report did not include the amount of THCA for each sample tested, only the final amount of THC. Appellant did not present competing testimony. Based upon its finding that appellant was guilty of marijuana possession, the jury clearly credited Sandor's testimony and we defer to the jury's assessment of credibility.

{¶ 34} Furthermore, the joint report of Sandor and Lami concluded that the substance seized from the Pacifica was marijuana based upon the amount of THC in the samples tested, and further provided the weight of the substance. Under R.C. 2925.51(A), a laboratory report from a qualifying facility—the Ohio State Highway Patrol Crime Laboratory here—and signed by the person performing the analysis, "stating that the substance that is the basis of the alleged offense has been weighed and analyzed and stating the findings as to the content, weight, and identity of the substance and that it contains any amount of a controlled substance . . . is prima-facie evidence of the content, identity, and weight or the existence and number of unit dosages of the substance." The State's supplementation of the criminalists' joint report with Sandor's testimony did not waive the State's ability to rely on the report as prima facie evidence under R.C. 2925.51(A). *State v. Schilling*, 65 Ohio App.3d 154, 160 (5th Dist. 1989); *State v. Isaac*, 1993 Ohio App. LEXIS 5061 (4th Dist. Sept. 29, 1993).

{¶ 35} In light of the foregoing, we find that the State presented evidence that the

substance at issue was marijuana and not hemp. Appellant's conviction for marijuana possession is not against the manifest weight of the evidence.

**{¶ 36}** Appellant's second assignment of error is overruled.

**{¶ 37}** Judgment affirmed.

BYRNE, P.J., and PIPER, J., concur.

## JUDGMENT ENTRY

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Madison County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Matthew R. Byrne, Presiding Judge

/s/ Robin N. Piper, Judge

/s/ Mike Powell, Judge