[Cite as *State v. Montgomery*, 2022-Ohio-4030.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220063 |
| | | TRIAL NO. 21TRC-10998A |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| ANTONIO MONTGOMERY, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: November 14, 2022


*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Amber H. Daniel*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista Gieske*, Assistant Public Defender, for Defendant-Appellant.

**MYERS, Presiding Judge.**

**{¶1}** Defendant-appellant Antonio Montgomery appeals from the trial court's entry convicting him upon a no-contest plea of operating a motor vehicle while under the influence of alcohol ("OVI") in violation of R.C. 4511.19(A)(1)(a). In a single assignment of error, Montgomery argues that the trial court erred in denying his motion to suppress. Finding Montgomery's argument to be without merit, we affirm the trial court's judgment.

### *Factual and Procedural Background*

**{¶2}** On May 20, 2021, several Cincinnati police officers were dispatched to a home on Glenway Avenue in response to a report of domestic violence. When they arrived at the home, Leprecious Turner, Montgomery's wife, told the officers that Montgomery had assaulted her earlier in the evening outside of a White Castle restaurant in Northside. While the officers were speaking to Turner, Montgomery arrived on the scene. After speaking to Montgomery, the officers suspected that he was under the influence of alcohol. Montgomery agreed to perform field-sobriety tests. Following his performance on those tests, Montgomery was placed under arrest and transported to Cincinnati Police Station District Three. At the station, he was read his *Miranda* rights and voluntarily submitted to a breath test and a urinalysis test.

**{¶3}** Montgomery was charged with three OVI related violations: a violation of R.C. 4511.19(A)(1)(a) for operating a motor vehicle while under the influence of alcohol or drugs, a violation of R.C. 4511.19(A)(1)(d) for operating a vehicle with a prohibited concentration of alcohol per liters of breath, and a violation of R.C. 4511.19(A)(1)(j) for operating a motor vehicle with a prohibited concentration of a controlled substance.

{¶4}     Montgomery filed a motion to suppress.  He argued, as relevant to this appeal, that he was subject to a custodial interrogation at the scene without being read his *Miranda* rights and that the officers lacked reasonable suspicion to ask him to perform field-sobriety tests.  He sought to suppress any statements he made, the results of his field-sobriety tests, and the results of the breathalyzer and urinalysis tests.

{¶5}     At the suppression hearing, Cincinnati Police Officer Randall Bryant testified that while he was speaking with Turner about the domestic-violence incident, Montgomery arrived on the scene at approximately 12:15 a.m. and parked across the street.  At the time Montgomery arrived, Officer Bryant believed, after speaking with Turner and observing her visible injuries, that there was probable cause to arrest Montgomery for domestic violence, but he did not convey this to Montgomery when they spoke.

{¶6}     According to Officer Bryant, Montgomery scraped his wheels on the curb as he parked his vehicle and seemed unsteady as he walked across the street, "like he was swaying back and forth."  Officer Bryant and two other officers approached Montgomery and began questioning him about the domestic-violence incident with his wife.  Montgomery seemed very excited, and it was difficult for the officers to initiate questioning.  Officer Bryant detected a mild odor of alcohol emanating from Montgomery and noticed that he had "a bit of slurring to his speech," as well as bloodshot and watery eyes.  Montgomery continually laughed as the officers spoke with him.

{¶7}     When Officer Bryant asked him if he had been in a physical altercation with his wife, Montgomery stated that he had been drinking that night and could not

remember getting into a physical altercation. In response to the officer's follow-up questions, Montgomery indicated that he had consumed too much alcohol to be able to remember the physical incident, but he "had not drank too much alcohol to be able to drive a vehicle." Montgomery eventually shared more details about the altercation with his wife, stating that they had drunk "a little bottle" and argued. Montgomery indicated that he had scratches on his face and hands from the altercation and that he had been punched in the head.

{¶8} Officer Bryant believed that Montgomery was impaired and asked him to submit to field-sobriety tests. Officer Bryant testified in detail about all three field-sobriety tests that Montgomery performed and, ultimately, failed. He stated that at the conclusion of the field-sobriety tests, Montgomery was placed under arrest and transported to the police station, where he was read his *Miranda* rights and voluntarily submitted to breath and urinalysis tests. Upon further questioning at the station, Montgomery admitted that he drank red wine that evening, and that he had stopped drinking between 9:00 p.m. and 11:00 p.m.

{¶9} Officer Bryant's body-worn camera video, which captured his entire interaction with Montgomery, including the field-sobriety tests, was admitted into evidence and played for the court.

{¶10} On cross-examination, Officer Bryant was questioned thoroughly about exactly when he believed that he had probable cause to arrest Montgomery for domestic violence. Officer Bryant again stated that he believed he had probable cause to arrest for that offense when Montgomery arrived on the scene. He also acknowledged that he was aware of a Cincinnati Police Department policy favoring the immediate arrest of a domestic-violence offender when probable cause exists.

According to Officer Bryant, Montgomery was not under arrest upon his arrival at the scene, but he would have been detained if he had attempted to leave. Officer Bryant attempted to clarify, stating that "So our probable cause is based on the fact that we only have a one sided statement. When he showed up that gave us the opportunity to talk to both sides to determine if we still had probable cause to make the arrest," and "I wanted to give him the opportunity to give his side of the story before I arrested him."

{¶11} Cincinnati Police Officer Vernon Hiatt testified that he read Montgomery his *Miranda* rights at the police station and witnessed Montgomery execute a waiver of those rights. Officer Hiatt witnessed Montgomery provide a urine sample and administered a breathalyzer test to Montgomery. He testified that the results of the breathalyzer test indicated that Montgomery's blood alcohol content was .081.

{¶12} In an oral decision issued from the bench, the trial court denied the motion to suppress. In relevant part, it found that the statements challenged by Montgomery were not the product of a custodial interrogation. In support, the court stated that "He was not in handcuffs. He was not at the police station. He was not in the police cruiser. He was on the sidewalk and voluntarily provided a great deal of information to the police in regards to both the reason for the initial encounter and ultimately to—they found it to be relevant to this OVI charge."

{¶13} Montgomery subsequently pled no contest to OVI in violation of R.C. 4511.19(A)(1)(a), and the two remaining charges were dismissed. He was sentenced to 180 days in jail. Montgomery received seven days of credit for time served, and the remaining 173 days were suspended. The trial court additionally imposed a six-month

period of community control, financial sanctions, and a one-year driver's license suspension.

{¶14} Montgomery now appeals, arguing in a single assignment of error that the trial court erred in denying his motion to suppress.

### Standard of Review

{¶15} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We must accept the trial court's factual findings if they are supported by competent, credible evidence, but we review de novo the trial court's application of the law to those facts. *Id.*

### Denial of Motion to Suppress

{¶16} Montgomery contends that the trial court erred in denying his motion to suppress because he was subject to a custodial interrogation without having had *Miranda* rights administered. He argues that his statements should have been suppressed because of the *Miranda* violation, and that the results of his field-sobriety, breath, and urinalysis tests should have been suppressed as fruit of the poisonous tree.

{¶17} The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." To protect a person's Fifth Amendment privilege against self-incrimination, the United States Supreme Court announced in *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that the prosecution may not use statements stemming from a custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards. The law is well-settled that in the absence of *Miranda*

6

warnings, statements obtained during a custodial interrogation are inadmissible. *State v. Hill*, 1st Dist. Hamilton No. C-170507, 2018-Ohio-3130, ¶ 45.

{¶18} An accused is subject to a custodial interrogation where she or he "has been taken into custody or deprived of his freedom, and a law enforcement officer questions that person." *Id.* An objective test is used to determine whether an accused was subject to a custodial interrogation. *State v. Durgan*, 1st Dist. Hamilton No. C-170148, 2018-Ohio-2310, ¶ 14. "Determining what constitutes custody for *Miranda* purposes depends on the facts of each case." *State v. Neely*, 161 Ohio App.3d 99, 2005-Ohio-2342, 829 N.E.2d 718, ¶ 26 (1st Dist.). "Whether a custodial interrogation has occurred depends on how a reasonable person in the suspect's position would have understood the situation." *State v. Stafford*, 158 Ohio App.3d 509, 2004-Ohio-3893, 817 N.E.2d 411, ¶ 40 (1st Dist.). An officer's intent to arrest does not dictate whether a custodial interrogation occurred. As the United States Supreme Court set forth in *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), "[a] policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation."

{¶19} The Supreme Court of Ohio clarified this reasonable-person test in *Cleveland v. Oles*, 152 Ohio St.3d 1, 2017-Ohio-5834, 92 N.E.3d 810, ¶ 30, holding that the test to be applied when determining whether a suspect was subject to a custodial interrogation is whether a reasonable person in the suspect's position would have understood herself or himself to be in custody, and not whether a reasonable person in the suspect's position would have felt free to leave. The court stated:

Oles contends that his belief that he was not free to leave should be dispositive. The court of appeals also articulated the test this way, finding that a reasonable person would not have felt free to leave. But the relevant inquiry is whether a reasonable person in the suspect's position would have understood himself or herself to be *in custody*. This nuance is important and well reasoned. If the inquiry were whether the driver felt free to leave, then every traffic stop could be considered a custodial interrogation because 'few motorists would feel free either to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so,' *Berkemer*, 468 U.S. at 436, 104 S.Ct. 3138, 82 L.Ed.2d 317. And a law-enforcement officer, in the midst of investigating a traffic stop and performing all its attendant procedures, would not consider a driver free to leave unless given permission. But 'not free to leave' and 'in custody' are distinct concepts. For purposes of the constitutional privilege against self-incrimination, the test is not whether the individual feels free to leave but whether the situation 'exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights.'

*Oles* at ¶ 30-31, quoting *Berkemer* at 436-437.

{¶20} With this relevant law in mind, we turn to Montgomery's arguments. Montgomery contends that because the officers at the scene had probable cause to arrest him for domestic violence and intended to arrest him for that offense, he was subject to a custodial interrogation as soon as they began questioning him. He urges

8

this court to adopt a bright-line rule that *Miranda* warnings must be given any time officers have probable cause to arrest. We reject Montgomery's proposition and decline to adopt such a rule. Rather, we continue to apply the well-settled law that whether an offender was subject to a custodial interrogation depends upon whether a reasonable person in the offender's position would have understood herself or himself to be in custody. *See id.* at ¶ 30.

**{¶21}** In determining whether a reasonable person in the offender's situation would have understood herself or himself to be in custody, the Second District has relied on the following factors:

1) What was the location where the questioning took place -- i.e., was the defendant comfortable and in a place a person would normally feel free to leave? For example, the defendant might be at home as opposed to being in the more restrictive environment of a police station;

2) Was the defendant a suspect at the time the interview began (bearing in mind that *Miranda* warnings are not required simply because the investigation has focused);

3) Was the defendant's freedom to leave restricted in any way;

4) Was the defendant handcuffed or told he was under arrest;

5) Were threats were (sic) made during the interrogation;

6) Was the defendant physically intimidated during the interrogation;

7) Did the police verbally dominate the interrogation;

8) What was the defendant's purpose for being at the place where questioning took place? For example, the defendant might be at a

9

hospital for treatment instead of being brought to the location for questioning;

9) Were neutral parties present at any point during the questioning;

10) Did police take any action to overpower, trick, or coerce the defendant into making a statement.

*State v. Estepp*, 2d Dist. Montgomery No. 16279, 1997 Ohio App. LEXIS 5279, *10-11 (Nov. 26, 1997). While this court has not formally adopted these factors, we find them instructive.

**{¶22}** As we consider whether a reasonable person in Montgomery's situation would have understood herself or himself to be in custody, we are mindful of the trial court's factual findings that Montgomery was not handcuffed by the officers, and was questioned on a sidewalk outside his home, rather than in a police cruiser or at a police station. As the trial court found, Montgomery was not questioned in a restrictive environment. He voluntarily returned to his home without being summoned there, and he approached the officers upon arriving on the scene. Although three officers formed somewhat of a perimeter around him for questioning, they did not engage in coercive tactics, intimidate, or threaten Montgomery. Nor did they dominate the questioning. The record indicates that Montgomery voluntarily answered the officers' questions and engaged in conversation with them. Upon his arrival at the scene, the officers suspected Montgomery of committing domestic violence, but he was not a suspect in any alcohol-related offenses.

**{¶23}** Following our review of the record, we hold that a reasonable person in Montgomery's situation would not have understood herself or himself to be in custody,

and therefore, that Montgomery was not subject to a custodial interrogation. Because he was not subject to a custodial interrogation, *Miranda* warnings were not required.

**{¶24}** Montgomery additionally relies on Ohio's preferred arrest policy set forth in R.C. 2935.03 to argue that *Miranda* warnings were required in this situation where officers had probable cause to arrest him for domestic violence. R.C. 2935.03(B)(3)(b) provides in relevant part:

> If pursuant to division (B)(3)(a) of this section a peace officer has reasonable grounds to believe that the offense of domestic violence or the offense of violating a protection order has been committed and reasonable cause to believe that a particular person is guilty of committing the offense, it is the preferred course of action in this state that the officer arrest and detain that person pursuant to division (B)(1) of this section until a warrant can be obtained.

**{¶25}** We find this statute irrelevant to an analysis of whether a suspect's constitutional rights were violated as the result of a custodial interrogation. As clearly established in *Berkemer*, an officer's unarticulated intent to arrest an offender has no bearing on whether a suspect was in custody. *Berkemer,* 468 U.S. at 442, 104 S.Ct. 3138, 82 L.Ed.2d 317. Rather, the focus remains on whether a reasonable person in the suspect's situation would have understood herself or himself to be in custody. Like an officer's unarticulated intent to arrest, Ohio's statutory preference for the arrest of offenders believed to have committed domestic violence similarly has no bearing on whether a custodial interrogation has occurred. And in any event, it is simply a preference.

**{¶26}** Because Montgomery was not subject to a custodial interrogation, *Miranda* warnings were not required. And because *Miranda* warnings were not required, Montgomery's statements were not inadmissible and the results of the field-sobriety, breath, and urinalysis tests were not subject to exclusion as fruit of the poisonous tree.[1]

**{¶27}** The trial court did not err in denying the motion to suppress. Montgomery's assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

**BERGERON** and **CROUSE, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

---

[1] We note that even if Montgomery had been subject to a custodial interrogation rendering his statements inadmissible, the record establishes that even with the exclusion of any statements made by Montgomery, the officers had reasonable suspicion to request that he perform field-sobriety tests. Officer Bryant's testimony established that Montgomery struck the curb when parking, seemed unsteady and swayed as he walked across the street, laughed at inappropriate times during the questioning, slurred his speech to an extent, had bloodshot and watery eyes, and had a mild odor of alcohol emanating from him.