[Cite as *State v. O'Neal*, 2023-Ohio-3268.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220541 |
| | | TRIAL NO. B-2101638-B |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| ADONIS O'NEAL, JR., | : | |
| | | |
| Defendant-Appellee. | : | |

Criminal Appeal From:   Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal: September 15, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender, for Defendant-Appellee.

**KINSLEY, Judge.**

{¶1} Plaintiff-appellant the state of Ohio appeals from the trial court's decision granting defendant-appellee Adonis O'Neal, Jr.'s, motion to suppress evidence found after police searched a car driven by O'Neal's codefendant, A.D., in which O'Neal had been a passenger. Because the officers had reasonable suspicion to detain O'Neal and probable cause to search the car he was traveling in, we hold that the trial court erred in granting O'Neal's motion to suppress.

### *Factual and Procedural Background*

{¶2} Following an encounter with police in the Avondale neighborhood of Cincinnati, O'Neal and A.D. were indicted on various felony charges. For his part, O'Neal was charged with three offenses related to the unlawful possession of a firearm and with two drug offenses. He then moved to suppress evidence obtained from the search and seizure of his person and the car he was traveling in.

{¶3} A.D. filed a similar motion in his case, and the trial court heard evidence related to A.D.'s motion to suppress. In lieu of presenting evidence with regard to O'Neal's suppression motion, the parties submitted the transcript from A.D.'s suppression hearing instead.

{¶4} At A.D.'s suppression hearing, Officer Brian Follrod testified that he was in plain clothes patrolling the Avondale neighborhood. He testified that he observed O'Neal and A.D. pull into a parking lot and walk into a convenience store. Follrod saw the grip of a pistol protruding from O'Neal's front pocket when he came out of the convenience store.

{¶5} After they came out of the store, O'Neal and A.D. got back in the car and drove away. Follrod then alerted the rest of his team that he had observed a firearm

2

in the area. Because he was in plain clothes and undercover, he could not stop the car. But he saw the car turn left and pull over. At that point, another officer stopped the occupants. When O'Neal and A.D. stepped out of the car, Follrod no longer saw the pistol in O'Neal's pocket. But he did see O'Neal throw what looked like a chicken bone on the ground. Further, Follrod ran the license plate of the car and noted that no one associated with the car had a concealed-carry permit.

{¶6} Officer Matthew Mauric, one of the officers that Follrod alerted, arrived after O'Neal and A.D.'s car had parked and the two men were standing beside it. Mauric observed that the car had excessive window tint. Based on Follrod's observation of O'Neal littering and the firearm in his pocket, Mauric detained, patted down, and later arrested O'Neal and A.D. Mauric confirmed that O'Neal was prohibited from possessing a firearm after obtaining his social security number and running his record.

{¶7} Mauric further testified that while he was standing next to the car, he observed a marijuana cigarette in the center console. He believed he had probable cause to search the car based on his observation of the marijuana cigarette. He also testified that because no firearm was recovered from O'Neal or A.D., he believed the firearm was in the car.

{¶8} The trial court granted O'Neal's motion to suppress, finding that the officers did not have reasonable suspicion or probable cause to stop, detain, or search O'Neal or the car. The state now appeals.

### Standard of Review

{¶9} This court reviews a trial court's decision as to a motion to suppress de novo. *State v. Thyot*, 2018-Ohio-644, 105 N.E.3d 1260, ¶ 17 (1st Dist.). "We must

accept the trial court's findings of fact as true if competent, credible evidence supports them. But we must independently determine whether the facts satisfy the applicable legal standard." *Id.*

### *Terry Stop*

**{¶10}** In its sole assignment of error, the state argues the trial court erred in granting O'Neal's motion to suppress. And in its first issue for review under this assignment of error, the state asserts Follrod's observation of a pistol grip in O'Neal's pocket provided the officers with reasonable suspicion to detain and investigate him.

**{¶11}** The Ohio Supreme Court detailed the requirements of an investigatory or *Terry* stop in *State v. Hariston*:

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Its protections extend to brief investigative stops that fall short of traditional arrests. An officer may perform such a stop when the officer has a reasonable suspicion based on specific and articulable facts that criminal behavior has occurred or is imminent. And when the officer is justified in believing that an individual may be armed and presently dangerous, the officer may conduct a limited protective search of the individual for concealed weapons.

The reasonable-suspicion standard is less demanding than the probable-cause standard used when analyzing an arrest. The determination [of] whether an officer had reasonable suspicion to conduct a *Terry* stop must be based on the totality of circumstances viewed through the eyes of the reasonable and prudent police officer on

4

the scene who must react to events as they unfold. We consider the cumulative facts not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

(Internal quotation marks and citations omitted.) *State v. Hariston*, 156 Ohio St.3d 363, 2019-Ohio-1622, 126 N.E.3d 1132, ¶ 9-10.

{¶12} With regard to firearms, the law in place at the time police searched O'Neal only permitted certain individuals to carry concealed weapons, namely those with permits or subject to specific permit exemptions. *See* R.C. 2923.12 (amended Apr. 4, 2023); *see also State v. Taylor*, 8th Dist. Cuyahoga No. 92382, 2009-Ohio-5822, ¶ 8 (describing former concealed-carry law). Courts construing this law have upheld investigatory stops where police directly observe a person in possession of a firearm. *See, e.g., Taylor* at ¶ 8; *State v. Moyer*, 10th Dist. Franklin No. 09AP-434, 2009-Ohio-6777, ¶ 25 ("An officer's seeing an object the officer reasonably believed to be a firearm in a person's hand creates reasonable, articulable suspicion that defendant is, or is about to be, engaged in criminal activity, namely carrying a concealed weapon."). After all, police may have no way of knowing if the person has a permit to possess a concealed weapon or if he or she is are instead committing an unlawful weapons offense without stopping the person to investigate.

{¶13} Here, Follrod directly observed O'Neal possessing a firearm and had no information that O'Neal had a permit to do so. Follrod knew, however, that the owner of the car did not have a concealed-carry permit, because a license-plate check revealed no such permit. These facts were sufficient to create reasonable suspicion that O'Neal may have been committing a weapons-possession offense and to justify an investigatory stop. *See Taylor* at ¶ 7. Accordingly, based on the totality of the

circumstances, we hold that the officers had reasonable suspicion to detain and investigate O'Neal.

### *Automobile Exception to the Warrant Requirement*

**{¶14}** In its second issue presented for review, the state argues the search of the car was permissible pursuant to the automobile exception to the warrant requirement.[1]  We agree.

**{¶15}** In *State v. Acoff*, we explained the parameters of the automobile exception:

> Under the automobile exception, officers are permitted to conduct a warrantless search of a lawfully stopped automobile if they have probable cause to believe that the vehicle contains contraband.  When an officer has probable cause to search an automobile, the officer may conduct a warrantless search of every part of the vehicle and its contents, including all movable containers and packages that could contain the object of the search.

(Internal quotation marks and citations omitted.) *State v. Acoff*, 2017-Ohio-8182, 100 N.E.3d 87, ¶ 23 (1st Dist.).

**{¶16}** The automobile exception to the warrant requirement is well-established.  *State v. Moore*, 90 Ohio St.3d 47, 51, 734 N.E.2d 804 (2000).  It exists because the inherent moveability of a car creates a real danger that contraband can be removed before a warrant can practically be issued.  *Id.*, citing *South Dakota v.*

---

[1] The state argues two other bases for the search of the car:  (1) Mauric's observation of a marijuana cigarette in plain view and (2)  police may search a car as part of a lawful *Terry* stop.  Given our holding that the automobile exception to the warrant requirement applies, we need not consider these alternate bases for justifying the search.

*Opperman*, 428 U.S. 364, 367, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). As we noted in *Acoff*, the absence of a traffic stop does not prevent the application of the automobile exception, as cars can always be moved even if they are not subject to an officer-initiated stop. *Acoff* at ¶ 24.

{¶17} The state argues the search of the car was supported by the officers' belief that the firearm was in the car. This belief was reasonable given Follrod's observation of the pistol grip in O'Neal's pocket moments before the car stopped and Mauric engaged O'Neal and A.D. Though O'Neal argues any initial suspicion that he was illegally carrying a firearm was dispelled after he was searched, this actually made it more likely that the firearm was in the car. In explaining the basis for his probable-cause determination, Mauric testified that after O'Neal and A.D. were searched and were found not to be in possession of the gun, "the only logical explanation would be that the firearm would have stayed inside of that vehicle." Further, given the excessive window tint Mauric observed, the officers would likely not have seen the firearm in their plain view.

{¶18} To qualify for the automobile exception, however, the police must have been searching for contraband in the vehicle—meaning that officers needed probable cause to believe that O'Neal's possession of the gun was unlawful. Importantly, before searching the car, Mauric ran O'Neal's social security number and confirmed that O'Neal was disabled from possessing a firearm. The police therefore possessed sufficient justification to believe that the gun was contraband and to search the car for it, making the automobile exception applicable here. *Acoff*, 2017-Ohio-8182, 100 N.E.3d 87, at ¶ 23-24.

### *Conclusion*

{¶19}    For the reasons set forth above, we hold that the officers had reasonable suspicion to search and detain O'Neal.  We further hold that the officers had probable cause to search the car O'Neal was traveling in pursuant to the automobile exception to the warrant requirement.  The trial court, therefore, erred in granting O'Neal's motion to suppress.  The state's assignment of error is sustained, the trial court's judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion and the law.

Judgment reversed and cause remanded.

**CROUSE, P.J.,** and **WINKLER, J.,** concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.