[Cite as *State v. Curry*, 2024-Ohio-5457.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


|                          |   |                                              |
|--------------------------|---|----------------------------------------------|
| STATE OF OHIO,           | : | APPEAL NO. C-240148                          |
|                          |   | TRIAL NO. B-2000193                          |
| Plaintiff-Appellee,      | : |                                              |
|                          |   | *O P I N I O N.*                             |
| vs.                      | : |                                              |
|                          |   |                                              |
| SHAWN CURRY,             | : |                                              |
|                          |   |                                              |
| Defendant-Appellant.     | : |                                              |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: November 20, 2024


*Melissa A. Powers,* Hamilton County Prosecuting Attorney*,* and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender*,* and *Joshua A. Thompson,* Assistant Public Defender, for Defendant-Appellant.

**KINSLEY, Judge.**

{¶1}    Defendant-appellant Shawn Curry appeals his convictions for drug and gun charges on the basis that the trial court erroneously denied his motion to suppress. In his sole assignment of error, Curry argues that evidence should have been excluded from his trial because he was subjected to a custodial interrogation without receiving *Miranda* warnings and because police searched his person absent articulable, reasonable suspicion or probable cause for an arrest. But because Curry was not in custody and because the officers who searched Curry did so with reasonable suspicion, we affirm the trial court's decision denying Curry's motion to suppress. We therefore overrule his sole assignment of error.

### *Factual And Procedural Background*

{¶2}    On January 17, 2020, Curry was charged in a five-count indictment with: Count 1, aggravated possession of drugs in violation of R.C. 2925.11(A), a second-degree felony; Count 2, aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2), a second-degree felony; Count 3,  carrying a concealed weapon in violation of R.C. 2923.12(A)(2), a fourth-degree felony; Count 4, improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B), a fourth-degree felony; and Count 5, having weapons while under disability in violation of R.C. 2923.13(A)(3), a third-degree felony.

{¶3}    These charges stem from a January 9, 2020 traffic stop of a vehicle in which Curry was a passenger. On February 10, 2020, Curry filed a motion to suppress. In the motion, Curry asserted that police lacked a valid basis to stop the vehicle and had no reasonable suspicion to detain the driver. Curry also asserted that because there was no justification for the stop, there was no justification to search him.

{¶4} On August 11, 2020, Curry filed a supplement to his motion to suppress raising three new arguments. First, Curry argued that his arrest for a violation of R.C. 4301.64, which prohibits the consumption of beer or intoxicating liquor in a motor vehicle, was without probable cause. More specifically, Curry pointed to a lack of evidence that he had actually consumed alcohol in the vehicle. Second, Curry sought to exclude a statement he made to police before he was Mirandized in which he admitted that there was alcohol in a cup he was holding. Third, Curry asserted that the smell of marijuana did not provide probable cause to justify the search of his person.

{¶5} On December 13, 2023, the trial court conducted an evidentiary hearing on Curry's motion to suppress. At the beginning of the suppression hearing, the State stipulated that Curry was subjected to a warrantless search and that it therefore bore the burden of justifying the reasonableness of the officer's actions.

{¶6} The State called Seargent Jerome Herring, the arresting officer, to testify. Herring testified that he was on an off-duty patrol in the Winton Terrace community the evening of January 9, 2020. He explained that he pulled into the parking lot of Tree Top Market around 7:45 p.m. Upon his arrival, Herring noticed a car with heavily-tinted windows immediately pull off. Herring testified that he decided to follow the car, which later rolled through a stop sign. As Herring explained, he then activated his signal and initiate a traffic stop.

{¶7} Herring testified that when he approached the vehicle, he noticed the driver and a female passenger, who turned out to be the driver's girlfriend, in the front two seats and Curry in the back passenger seat. Herring testified that he collected all three individuals' identification and returned to his vehicle to run them through his

3

computer system. Herring explained that the system revealed that the driver had active warrants for his arrest and that Curry had a 2015 gun-related charge. Herring testified that, after he discovered this information, he placed the driver under arrest.

{¶8} According to Herring, he next spoke with the driver's girlfriend, who was the owner of the vehicle. Herring warned her about negligently entrusting her car to someone without a license. Herring also told the driver's girlfriend and Curry that they would be back on the road very soon, but instructed them to wait until the officers left before they got out to switch seats. Herring explained that at this point he noticed that Curry had a red cup in his hand. Herring asked Curry what was in the cup, and Curry responded that the cup contained liquor. Curry was not Mirandized before he made this statement.

{¶9} Herring then asked Curry to step out of the vehicle. Herring explained that, when Curry exited from the vehicle, he smelled alcohol on Curry's breath and marijuana coming from his person. Herring testified that he then patted Curry down to search for weapons and evidence of marijuana. Herring explained that during the pat-down, he recovered a firearm containing live rounds, a firearm magazine, a large Ziploc bag of raw marijuana, a smaller bag of marijuana, and a bag containing pills that he believed to methamphetamine.

{¶10} Following his direct examination, footage from Herring's body-worn camera ("BWC") was played in court.

{¶11} During Herring's cross-examination, Herring clarified certain aspects of his interactions with Curry. For one, Herring admitted that his partner Officer Wallet engaged with Curry first. Based on his initial encounter, Wallet determined that Curry was not suspicious. According to Herring, the officers' initial decision to

allow Curry and the driver's girlfriend to leave was based on Wallet's preliminary assessment. Herring also provided further clarification as to the length of the stop. Herring testified that he told Curry and the female, "Don't leave yet," as they were preparing to drive away. Herring explained that he told them that because, in his view, they were not free to leave. When asked about why he patted Curry down after Curry got out of the car, Herring explained that he was looking for contraband. In his mind, he testified, "drugs and guns go together."

{¶12} On February 14, 2024, the trial court denied Curry's motion to suppress. Regarding the *Miranda* issue, the trial court concluded that Curry was not in custody when Herring asked him what his cup contained. In this regard, the trial court emphasized Herring's statement to the driver's girlfriend—that she and Curry would be free to leave soon once the officers finished—finding that a reasonable person in this situation would believe that he was free to leave. The trial court also found that the police interaction with Curry "was minimal and not intrusive." For these reasons, the trial court rejected Curry's argument that he should have been Mirandized.

{¶13} Regarding Curry's argument as to the search of his person, the trial court found that, "[u]nder the totality of the circumstances, Sergeant Herring was reasonable in performing the *Terry* pat down . . . ."[1] It accordingly denied Curry's motion to suppress the items that were found when Curry was searched.

{¶14} Following the trial court's decision denying his motion to suppress, Curry pleaded no contest to all five charges in the indictment, and the trial court found

---

[1] The trial court also applied the automobile exception to the search warrant requirement. *See, e.g.*, *State v. Jackson*, 2018-Ohio-1068, ¶ 26 (10th Dist.) (describing automobile exception as permitting police to search a motor vehicle when they have probable cause to believe it contains contraband). Our review of the record, however, does not support the trial court's finding that the car itself was searched in this case, nor does Curry challenge the trial court's ruling as to any search of the car. The automobile exception is therefore immaterial to the issues before us on appeal.

him guilty as charged. Curry reserved his right to appeal the trial court's suppression decision.

{¶15} Curry was sentenced the same day his plea was entered. The trial court merged Counts 1 and 4 and imposed a sentence of five years in prison. As to Count 3, Curry was sentenced to nine months in prison. As to Count 4, Curry was sentenced to 18 months in prison. The trial court ordered the sentences to be served concurrently with one another for an aggregate sentence of five to seven years and six months in the Ohio Department of Rehabilitation and Correction. The trial court further imposed up to three years but no less than 18 months of postrelease control on Count 1 and two years of postrelease control on the remaining counts. The trial court credited Curry with 226 days that he spent in jail towards his prison time, remitted court costs and fines, and ordered the firearms to be forfeited.

{¶16} Curry now appeals.

### *Analysis*

{¶17} In his sole assignment of error, Curry argues that the trial court erred in denying his motion to suppress. Curry advances four separate issues in support of his position. First, Curry argues that his admission that his cup contained alcohol should have been suppressed because he was in custody and had not been advised of his *Miranda* rights. Second, Curry argues that Herring's pat-down search of his person was not supported by articulable, reasonable suspicion. Third, Curry argues that his arrest was not supported by probable cause, because there was no evidence that he actually consumed the alcohol in his cup while in the vehicle. Lastly, Curry advances an argument under the fruit-of-the-poisonous-tree doctrine that all of the evidence obtained against him was subject to suppression.

{¶18} We review a motion to suppress under a blended standard of review. *See In re J.T.*, 2023-Ohio-2695, ¶ 15-16 (1st Dist.). Under this standard, we accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* at ¶ 15. We then review de novo whether the facts meet the applicable legal standard. *Id.*

### *Custodial Interrogation*

{¶19} In his first argument presented on appeal, Curry argues that his statement that there was liquor in his cup should have been suppressed because he was not given *Miranda* warnings.

{¶20} At the outset, the State contends that Curry waived this argument by not presenting it below. *See Bender v. Durrani*, 2024-Ohio-1258, ¶ 147 ("[I]ssues not raised in the trial court may not be raised for the first time on appeal because such issues are deemed waived."). But our review of the record reveals otherwise. Curry raised the argument that his statement violated *Miranda* in the supplement to his motion to suppress, and he elicited testimony at the suppression hearing to demonstrate that he had not been Mirandized during the search. The trial court clearly understood Curry to be challenging the admissibility of his statements, because it analyzed whether Curry was subject to custodial interrogation. The issue was therefore properly preserved and is now before us to decide.

{¶21} The Fifth Amendment to the United States Constitution protects a person from self-incrimination. U.S. Const., amend. V. "[T]he prosecution may not use statements stemming from a custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards. The law is well-settled that in the absence of *Miranda* warnings, statements obtained during a custodial interrogation

are inadmissible." (Citations omitted.) *State v. Montgomery*, 2022-Ohio-4030, ¶ 17-18 (1st Dist.). A person who has been taken into custody and deprived of freedom while being questioned by police is subject to custodial interrogation. *Id*. at ¶ 17-18. The test for custodial interrogation is therefore an objective one that focuses on how a reasonable person would feel in the situation. *Id*. at ¶ 18.

**{¶22}** In the specific context of traffic stops, courts have declined to fashion a bright-line rule that occupants of a car are subject to custodial interrogation when they are stopped and questioned by police. *See, e.g., City of Cleveland v. Oles*, 2017-Ohio-5834, ¶ 22-23. Instead, courts look to factors that describe the totality of the circumstances, finding, for example, that police interrogation of a front-seat occupant of a car does not constitute custodial interrogation where the intrusion is minimal, the questioning and detention are brief, and the interaction is not threatening or intimidating. *Id*. at ¶ 24.

**{¶23}** In keeping with this factor-based approach, we adopted a multi-factor test "determining whether a reasonable person in the offender's situation would have understood herself or himself to be in custody." *Montgomery* at ¶ 21. Those factors include (1) the location where the questioning took place, (2) whether the defendant was a suspect at the time the interview began, (3) whether the defendant's freedom to leave was restricted, (4) whether the defendant was handcuffed or told he was under arrest, (5) whether the police made threats during the interrogation, (6) whether the defendant was physically intimidated, (7) whether police verbally dominated the interaction, (8) the defendant's purpose for being at the location of the questioning, (9) whether any neutral parties were present during the questioning, and (10) whether

8

the police took action to trick, overpower, or coerce the defendant into making a statement. *Id.*

**{¶24}** Applying the *Montgomery* factors to Curry's interaction with Herring, and considering the totality of the circumstances, we conclude that Curry was not in custody at the time Herring asked him about the contents of his cup.

**{¶25}** Regarding the first factor—location—Herring's contact with Curry took place while Curry was seated in a personal vehicle on the side of the public road, rather than in a police cruiser or station. These circumstances are less custodial and more conducive to Curry's ability to leave the scene than other situations in which a person might be questioned by police. Indeed, for these reasons, the public nature and short duration of traffic stops typically render them outside of *Miranda*. *State v. Brocker*, 2015-Ohio-3412, ¶ 14-18 (8th Dist.).

**{¶26}** As to the second factor—whether Curry was a suspect—nothing in the record indicates that Curry was suspected of any particular crime at the time Herring inquired about the contents of Curry's drink. In fact, the question itself undercuts the notion that Curry was a suspect. Herring had to ask because he did not know.

**{¶27}** Regarding the third factor—whether Curry was free to leave—the record demonstrates that he was. Herring directly communicated to the driver's girlfriend that she and Curry were not being detained and that they could drive away as soon as officers left. The officers only requested that the driver's girlfriend wait for the officers to pull off so they could safely exit from the scene.

**{¶28}** Curry concedes that the fourth and fifth factors—whether he was placed in handcuffs or otherwise under arrest and whether police made threats—were not present.

**{¶29}** As to the sixth factor—physical intimidation—Curry argues that he was in fact intimidated by the presence of multiple officers at the scene. A reasonable person may indeed feel unsettled by the rapid onset of numerous police cars. *See State v. Greene*, 2015-Ohio-2060, ¶ 20 (2d Dist.). Nonetheless, nothing in the record reflects that Curry was physically intimidated by the officers on the scene. No one touched him or dictated his movements in any way.

**{¶30}** Regarding the seventh factor—verbal domination—the record does not reflect any imbalance in the interaction between Herring and Curry. Rather, Herring asked Curry a simple question about the contents of his beverage.

**{¶31}** As to the eighth factor—Curry's purpose for being in the location— nothing in the record explains why Curry was in the vehicle with the driver and his girlfriend. The record does show, however, that Curry rode in the vehicle willingly. Whatever his purpose was for being in the vehicle, it was not directed by the police.

**{¶32}** As to the ninth factor—whether neutral parties were present—the driver's girlfriend was present for Curry's entire interaction with police. This undercuts any suggestion that police placed Curry in custody.

**{¶33}** So too does the tenth factor—coercive police tactics—weigh against Curry. There is no suggestion that the police tricked or attempted to overpower him.

**{¶34}** Taking these factors in concert, the evidence reveals that Curry was not in custody when asked the question about the contents of his cup. Despite the presence of multiple officers, Curry was not restricted from leaving the scene. To the contrary, Herring indicated Curry was essentially free to go. As a result, Curry voluntarily answered Herring's question, given the lack of coercive, intimidating, or threatening tactics by police.

{¶35} Our conclusion in Curry's case tracks our decision in *State v. Rice*, 2009-Ohio-6332 (1st Dist.). There, we reversed a decision by the trial court to suppress statements made by Rice after he had been placed in the backseat of a police cruiser during a traffic stop. *Id.* at ¶ 2. Rice had initially been stopped for failing to yield to a motorcycle. *Id.* At the time of the stop, the arresting officer noticed an odor of alcohol coming from Rice's vehicle. *Id.* Rice admitted to drinking beer and was asked to get out of his car. *Id.* He was then placed in the back of the officer's cruiser, where he further stated that he had consumed four 16-ounce beers. *Id.* In considering whether this statement was admissible despite the lack of *Miranda* warnings, we concluded that Rice was not in custody. *Id.* at ¶ 13. This was because Rice's interaction with the officer was brief, Rice was not placed in handcuffs, and the officer was not combative or coercive. *Id.* at ¶ 13-15.

{¶36} Similar to *Rice*, Curry's interaction with Herring was not lengthy, overtly intimidating, threatening, or physical. It occurred in the presence of the driver's girlfriend—a neutral third-party—on a public roadway after Curry had been informed he and the driver's girlfriend could momentarily drive away. As such, considering the encounter in total, Curry was not subjected to a custodial interrogation requiring *Miranda* warnings when questioned about the contents of his cup.

### *Reasonable Suspicion*

{¶37} Curry next challenges the legality of the pat-down search conducted by Herring after Curry was ordered out of the car. More specifically, he contends that he posed no risk to officer safety and that Herring's use of a *Terry* frisk for weapons was therefore unjustified. Curry also disputes the officers' belief that he was carrying a firearm as a justification for being patted down.

{¶38} Under *Terry v. Ohio*, 392 U.S. 1 (1968), police may briefly detain individuals for the purpose of investigation, including conducting traffic stops, if they have reasonable suspicion that criminal activity is afoot. *State v. Saunders*, 2018-Ohio-2624, ¶ 27 (5th Dist.). "Reasonable suspicion is difficult to define, but it requires more than an 'inchoate or unparticularized suspicion' and is a lower standard than probable cause. Courts should consider whether the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief to take the same actions.'" (Cleaned up.) *In re J.T.*, 2023-Ohio-2695, at ¶ 18 (1st Dist.).

{¶39} In the specific context of a traffic stop supported by reasonable suspicion, officers may order occupants out of a vehicle. (Citations omitted.) *In re J.F.*, 2024-Ohio-1950, ¶ 18 (1st Dist.). Once a passenger is outside a car, officers may conduct a limited protective search, or a *Terry* pat-down, if they believe the person presents a danger to officer safety. *State v. Henson*, 2022-Ohio-1571, ¶ 15 (1st Dist.), citing *Terry*. The prosecution bears the burden of showing that the *Terry* frisk was constitutional and was limited to a pat-down search for concealed weapons. *Id.* at ¶ 16.

{¶40} The State justified Herring's pat-down of Curry by Herring's testimony and BWC footage at the suppression hearing. To that end, the State presented evidence that Herring ran Curry's personal information through the police computer in his cruiser and ascertained that Curry had a gun-related conviction in 2015 on his record. This was one potential red flag in Herring's mind that Curry might pose a risk to the safety of officers on the scene. Herring also testified that he smelled an odor of marijuana coming from Curry and that, in his impression, "guns and drugs go together." He thus believed that Curry presented a heightened risk of being armed.

Moreover, as the trial court noted, it was dark outside, and numerous officers were near Curry and the vehicle. Given Curry's criminal history and the circumstances of the traffic stop, Herring possessed a reasonable suspicion that Curry presented a risk to officer safety. He was therefore justified in conducting a *Terry* frisk when Curry got out of the car.

### *Probable Cause for Arrest*

**{¶41}** In his third argument, Curry asserts that Herring lacked probable cause to arrest him, and also to search his person, because there was no evidence that he consumed the alcohol while in the vehicle. Essentially, Curry contends that because officers lacked proof of an essential element of R.C. 4301.64–namely, consumption of alcohol while in a vehicle—they at most had probable cause to believe Curry committed the lesser minor misdemeanor offense of an open container violation. On this basis, he argues that he could not be arrested for a minor misdemeanor offense. Curry's argument fails.

**{¶42}** An arrest is valid if it is supported by probable cause. *State v. Bremenkamp*, 2014-Ohio-5097, ¶ 8 (1st Dist.). The standard for probable cause is whether "at the moment of the arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect" committed the suspected crime. *Id.*, citing *State v. Homan*, 89 Ohio St.3d 421, 427 (2000).

**{¶43}** Herring testified that Curry was not placed under arrest until after Curry got out of the car and Herring smelled alcohol coming from his breath. This was after Curry admitted that there was alcohol in his cup, a statement he made while in the backseat of the car. Thus, based on the evidence known to Herring at the time—

13

that Curry admitted to having an open container with liquor in it, that Curry was in the backseat of a moving car, and that Curry's breath smelled of alcohol—Herring had sufficient information to believe that Curry committed the offense of consumption of alcohol in a motor vehicle. It is immaterial that no one saw Curry actually drink from the cup while in the car, as officers could make an inference that this took place based on smelling Curry's breath. The facts in total amounted to probable cause that Curry committed an offense under R.C. 4301.64.

### *Exclusionary Rule*

**{¶44}** In his final argument, Curry asserts the fruit-of-the-poisonous-tree doctrine as a basis for suppressing his statement, the search, and his arrest. But because each subsequent intrusion by officers, beginning with Herring's question about what was in Curry's cup and concluding with Curry's arrest, was justified by the appropriate level of proof by the State, Curry is not entitled to suppression.

### *Conclusion*

**{¶45}** Curry was not placed in custody when Officer Herring asked him what was in his cup during the traffic stop. He was accordingly not entitled to *Miranda* warnings, nor was he entitled to suppress his unMirandized statement at trial. Nor was Curry correct in arguing to suppress the results of a pat-down search reasonably conducted for officer safety or the fact of his arrest, which was supported by probable cause that he committed the offense of consuming alcohol in a motor vehicle. For these reasons, the trial court did not err in denying Curry's motion to suppress. We accordingly overrule Curry's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P.J.,** and **BERGERON, J.**, concur**.**

Please note:

    The court has recorded its own entry on the date of the release of this opinion.