[Cite as *State v. Higgins*, 2026-Ohio-435.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :          APPEAL NO.    C-250149
                                                   TRIAL NO.     C/24/CRB/13164
      Plaintiff-Appellee,             :

  vs.                                  :
                                                          *JUDGMENT ENTRY*
NATASHA HIGGINS,                        :

      Defendant-Appellant.            :


This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed 50% to appellant and 50% to appellee.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**

**Enter upon the journal of the court on 2/11/2026 per order of the court.**


**By:**_____
       **Administrative Judge**

[Cite as *State v. Higgins*, 2026-Ohio-435.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :          APPEAL NO.   C-250149
                                                   TRIAL NO.    C/24/CRB/13164
    Plaintiff-Appellee,          :

  vs.                                 :

                                                          *O P I N I O N*

NATASHA HIGGINS,                        :

    Defendant-Appellant.         :


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: February 11, 2026


*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Candace Crear,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Joshua A. Thompson*, Assistant Public Defender, for Defendant-Appellant.

**Bock, Judge.**

{¶1} An asset-protection associate at a Walmart store observed defendant-appellant Natasha Higgins fail to scan several items at a self-checkout register and then attempt to leave the store. The employee stopped Higgins, escorted her to a loss-prevention room, and called the police. An officer arrived and questioned Higgins. The trial court denied Higgins's motion to suppress her statements to the officer and later found Higgins guilty of theft following a bench trial.

{¶2} We affirm the trial court's denial of Higgins's motion to suppress because Higgins was not in custody when the officer asked her a question in the loss-prevention room. But we reverse Higgins's conviction because the trial court failed to obtain a written jury waiver from Higgins and therefore lacked jurisdiction to hold a bench trial. We overrule Higgins's first assignment of error, sustain her second, decline to address her third assignment of error as moot, and remand the cause for further proceedings.

### I. Factual and Procedural History

#### A. Procedural history

{¶3} The State charged Higgins with theft, a first-degree misdemeanor. Higgins moved to suppress statements she made to police inside the Walmart loss-prevention room, as well as evidence stemming from those statements. After a hearing on the motion to suppress, the trial court denied it.

{¶4} In November 2024, Higgins filed a written jury demand. During a pretrial conference in January 2025, Higgins's counsel orally requested to set the case for a bench trial. But Higgins never waived her right to a jury trial on the record or filed a written waiver of her right to a jury trial.

{¶5} The trial court held a bench trial, found Higgins guilty, and sentenced

her to 180 days in jail, with 180 days suspended on the condition that she complete a National Curriculum & Training Institute theft class, one year of probation, a $50 fine, and costs, and ordered Higgins to stay away from all Walmart locations. The court denied Higgins's motion to stay the sentence pending appeal.

**{¶6}** Higgins appealed.[1]

### B. Motion to suppress testimony

**{¶7}** T.F., a Walmart employee, observed Higgins bagging items that she had not scanned at a self-checkout lane. T.F. escorted Higgins to a loss-prevention office and called the police. No Walmart employee testified at the suppression hearing, but Officer McLearen of the Village of Fairfax Police Department testified that he believed a person in a store's loss-prevention office is "free to leave. They are not police officers that are trying to stop them." The door to the room was partially open when McLearen arrived at the store.

**{¶8}** McLearen, wearing his police uniform and carrying his police-issued firearm, opened the door to the loss-prevention room, where Higgins and T.F. were located. T.F. left the room once McLearen arrived. Higgins, who was not in handcuffs, was seated with her shopping cart in front of her. McLearen stood in the doorway and asked Higgins, "What's going on today?"

**{¶9}** McLearen testified that his question was not to gather evidence, but instead was an attempt "to determine how I am going to deal with the situation, whether it is further investigation, one; two citing her; three, taking her to jail. So I am just trying to gather basically, you know, her demeanor." McLearen agreed that he asked Higgins what was going on "in the context of what happened at Walmart."

---

[1] This court granted Higgins's motion to stay her sentence pending appeal.

Higgins responded to McLearen's question.

**{¶10}** McLearen did not tell Higgins that she was or was not free to leave. But McLearen explained that he rarely permits a suspect to leave while he is investigating the suspect.

## II. Analysis

**{¶11}** Higgins raises three assignments of error. First, she argues that the trial court erred in denying her motion to suppress. Second, she asserts that the trial court lacked jurisdiction to hold a bench trial because she never signed a jury waiver. Finally, she claims her conviction is against the manifest weight of the evidence.

### A. First Assignment of Error

**{¶12}** Higgins's first assignment of error asserts the trial court erred in denying her motion to suppress her statements to McLearen and evidence collected stemming from her statements. She argues that McLearen asked her an investigatory question while she was in custody without reading her *Miranda* warnings.

#### 1. Standard of review

**{¶13}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Thyot*, 2018-Ohio-644, ¶ 17 (1st Dist.). When reviewing a trial court's decision whether to suppress evidence, we accept the trial court's factual findings if competent, credible evidence supports those findings. *State v. O'Neal*, 2023-Ohio-3268, ¶ 9 (1st Dist.). But we review de novo whether those factual findings satisfy the applicable legal standards. *State v. Harrison*, 2021-Ohio-4465, ¶ 11.

#### 2. *Miranda* warnings

**{¶14}** To ensure a crime suspect's privilege against self-incrimination guaranteed under the Fifth Amendment to the United States Constitution, the Supreme Court of the United States "established procedural safeguards . . . commonly

known as *Miranda* warnings," which police officers are required to provide to a suspect. *City of Cleveland v. Oles*, 2017-Ohio-5834, ¶ 8-9; *see Miranda v. Arizona*, 384 U.S. 436 (1966). *Miranda* warnings serve to counter "the coercive pressure present during a custodial interrogation." *Oles* at ¶ 9. Defendants' unwarned statements made during custodial interrogations may not be used against them as evidence of guilt at trial. *Id.*

{¶15} *Miranda* warnings are required only when a person is both (1) in custody and (2) subject to an "interrogation." *See id.* "A custodial interrogation is 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *Id.*, quoting *Miranda* at 444.

{¶16} Here, the trial court found that Higgins was neither in custody nor subject to an interrogation. Because we agree that Higgins was not in custody, we do not consider whether McLearen's question constituted an interrogation.

### a. "In Custody"

{¶17} To determine if an individual is in custody for *Miranda* purposes, courts consider whether reasonable people in the same situation would believe they were in custody. *Oles*, 2017-Ohio-5834, at ¶ 30. Courts consider the totality of the circumstances and ask if "the situation 'exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights.'" *Id.* at ¶ 31, quoting *Berkemer v. McCarty*, 468 U.S. 420, 437 (1984). Whether a person is in custody is distinct from whether a person feels they are free to leave. *Id.*

{¶18} This court has provided a nonexhaustive list of factors courts should consider to determine if the totality of the circumstances shows a defendant was in

6

custody: (1) the location of the questioning, (2) if the defendant was a suspect when the interview began, (3) whether the defendant was free to leave, (4) whether law enforcement placed the defendant in handcuffs or said that the defendant was under arrest, (5) if law enforcement threatened the defendant during the interview, (6) if law enforcement physically intimidated the defendant, (7) whether law enforcement verbally dominated the interaction, (8) why the defendant was present at the location of the questioning, (9) if a neutral person was present, and (10) whether law enforcement attempted to trick, overpower, or coerce the defendant into making a statement. *State v. Curry*, 2024-Ohio-5457, ¶ 23 (1st Dist.), citing *State v. Montgomery*, 2022-Ohio-4030, ¶ 21 (1st Dist.).

### b. Custody in stores' loss-prevention rooms

{¶19} In cases specifically involving police questioning a defendant in a store's loss-prevention room, courts rely on factors similar to those provided by this court in *Curry*. The Second District determined that a suspect held in a store's loss-prevention room and questioned by police was in custody for *Miranda* purposes where the defendant was "handcuffed and not free to leave the small detention area." *State v. Severt*, 2010-Ohio-5389, ¶ 28 (2d Dist.). In another case, police questioned the defendant (Kier) in the store where he worked. *State v. Kier*, 2002-Ohio-2619, ¶ 1-9 (2d Dist.). A loss-prevention employee locked the store before police questioned Kier. *Id.* at ¶ 24. A police officer questioned Kier, but no one told him he could not leave and he was not arrested after the officer finished questioning him. *Id.* The court determined that Kier was not in custody when he was questioned. *Id.*

{¶20} The Kentucky Court of Appeals held that a defendant was in custody where he voluntarily went to the store's loss-prevention room, two police officers arrived, one officer stood in the doorway, which blocked the defendant from leaving,

and "most importantly of all, [one officer] thoroughly searched [the suspect], engaging in 'physical touching of the person of the citizen[.]'" *Bethel v. Commonwealth*, 2007 Ky. App. LEXIS 105, *8 (Apr. 13, 2007), quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). The *Bethel* court's conclusion primarily relied on an officer searching the suspect before police began questioning him, which the court viewed as "a clear display of the officer's authority" over the suspect. *Id.* at *9.

### c. The *Curry* factors

{¶21} Location: We first consider where Higgins was questioned. Higgins and McLearen spoke in the loss-prevention office of a Walmart store. McLearen did not question Higgins in a police station or cruiser, which would have weighed in favor of Higgins being in custody. But while the room was not in a police station, McLearen stood in the doorway of the small, cramped room. This factor is neutral.

{¶22} Suspect: McLearen affirmatively stated that Higgins was a theft suspect when he arrived at the Walmart store. This factor weighs in favor of finding that Higgins was in custody.

{¶23} Freedom to leave: Higgins argues that she was physically unable to leave the room because McLearen stood in the doorway, which blocked her ability to leave. When McLearen arrived, the door to the loss-prevention room was slightly open. McLearen did not tell Higgins that she was or was not free to leave. But he testified that Higgins was a suspect and he rarely allows suspects to leave the scene before he is finished investigating. And McLearen blocked the only exit to the loss-prevention room. This factor weighs in favor of finding Higgins was in custody.

{¶24} Handcuffs or under arrest: Higgins was not handcuffed in the loss-prevention office. Before McLearen asked Higgins, "What's going on today?" he did not tell her she was under arrest. This factor weighs against finding that Higgins was

in custody.

**{¶25}** Threats: The record shows that McLearen's first words were "[w]hat's going on today?" Higgins's responses to that question are the statements she wishes to suppress. The record shows that McLearen made no threats, so this factor weighs against finding that Higgins was in custody.

**{¶26}** Physical intimidation: Higgins argues that "being blocked inside an asset protection office by a police officer would be intimidating to any reasonable person." While a person reasonably might feel intimidated by the presence of a police officer, there is no evidence that McLearen did anything to physically intimidate Higgins. He entered the room while wearing his standard uniform, which included a firearm. While he stood between Higgins and the doorway, his actions did not suggest he was using physical intimidation to block the door. McLearen did not draw his weapon or act in another threatening manner. McLearen did not physically intimidate Higgins, so this factor weighs against Higgins being in custody.

**{¶27}** Verbal domination: McLearen's tone of voice generally was polite and friendly. This factor weighs against an in-custody finding.

**{¶28}** Reason for being at the location: Higgins was in the loss-prevention office because T.F., a Walmart employee, escorted her there. As such, Higgins's presence there was "not directed by the police." *See Curry*, 2024-Ohio-5457, at ¶ 31 (1st Dist.). This factor weighs against finding that she was in custody.

**{¶29}** Neutral parties: Initially, Higgins waited in the loss-prevention room with T.F., the person who accused Higgins of theft. Once McLearen arrived, T.F. left the room, leaving Higgins alone with McLearen. This factor weighs in favor of finding Higgins was in custody.

**{¶30}** Tricks, overpowering, or coercion: There is nothing in the record

suggesting McLearen tricked, overpowered, or coerced Higgins into answering his questions. The final factor weighs against finding Higgins was in custody.

{¶31} After considering the totality of the circumstances, including the *Curry* factors, we hold that Higgins was not in custody when McLearen asked her, "What's going on today?" McLearen had just entered the loss-prevention office, which was not in a police station or cruiser. Higgins had not been arrested and was not physically restrained. McLearen did nothing to dominate, intimidate, trick, overpower, or coerce Higgins. And while Higgins may have not been free to leave, a suspect's lacking the freedom to leave an interview with law enforcement officers does not always render the suspect in custody for *Miranda* purposes. *See Oles*, 2017-Ohio-5834, at ¶ 30.

{¶32} Because we hold that Higgins was not in custody when McLearen questioned her, we do not address whether McLearen's question constituted an interrogation under *Miranda*.

{¶33} We overrule Higgins's first assignment of error.

## B. Second assignment of error: lack of jury waiver

{¶34} In her second assignment of error, Higgins argues that the trial court lacked jurisdiction to hold a bench trial because she did not waive her right to a jury trial. The State concedes the error.

{¶35} The State charged Higgins with theft in violation of R.C. 2913.02(A)(1), a first-degree misdemeanor. R.C. 2945.17 establishes Higgins's right to a jury trial. Unlike a defendant charged with felony offenses, who needs not act to invoke the right to a jury trial, a defendant charged with only "petty offense[s]" must file a written jury demand to invoke the right to a jury trial. Crim.R. 23(A).

{¶36} Once a defendant has invoked the right to a jury trial, that right can only be waived via strict compliance with R.C. 2945.05. *State v. Pless*, 74 Ohio St.3d 333

(1996), paragraph one of the syllabus (R.C. 2945.05 provides the manner in which a defendant may waive the right to a jury trial "[i]in all criminal cases."). A jury waiver must be made in writing, signed by the defendant, and filed on the record. *Id.* "Absent strict compliance with the requirements of R.C. 2945.05, a trial court lacks jurisdiction to try the defendant without a jury." *Id.*

**{¶37}** This court has considered whether a defendant, who had previously invoked his right to a jury trial and later orally asked the court for a bench trial, was barred by the invited-error doctrine from asserting on appeal that the trial court lacked jurisdiction to conduct a bench trial because the record did not contain a written jury waiver. *State v. Howell*, 2017-Ohio-7182, ¶ 9, 12 (1st Dist.). We held that only strict compliance with R.C. 2945.05 waives a jury demand. *Id.* at ¶ 12.

**{¶38}** Here, Higgins filed a written jury demand, invoking her right to a jury trial. Although Higgins's counsel orally requested a bench trial, Higgins herself did not waive her right to a jury trial on the record and the record contains no written waiver. The State concedes that Higgins did not waive her right to a jury trial.

**{¶39}** We hold that the trial court lacked jurisdiction to conduct a bench trial because Higgins did not waive her right to a jury trial. We sustain Higgins's second assignment of error, reverse Higgins's conviction, and remand the cause for further proceedings.

**{¶40}** Based on our resolution of the second assignment of error, Higgins's third assignment of error challenging the weight of the evidence is moot and we do not address it.

### III.  Conclusion

**{¶41}** We overrule Higgins's first assignment of error because the trial court did not err by denying Higgins's motion to suppress. We sustain Higgins's second

assignment of error because the trial court lacked jurisdiction to conduct a bench trial. And we decline to address her third assignment of error because it is moot.

**{¶42}** Accordingly, we affirm in part and reverse in part the trial court's judgment, and we remand the cause for further proceedings.

Judgment accordingly.

**ZAYAS, P.J.,** and **NESTOR, J.,** concur.